**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| J McCloud Realty LLC,<br><br>                              *Debtor.* | Case No. 25-11778-amc<br>Chapter 11 |

**Chapter 11 Subchapter V Plan of Liquidation**

Debtor J McCloud Realty LLC, through its proposed attorney, submits this plan of liquidation under 11 U.S.C. §§ 1128 and 1129.

Date: May 8, 2025

                                                **SADEK LAW OFFICES, LLC**
                                                *Proposed Attorney for Debtor*

By: /s/ Michael I. Assad
      Michael I. Assad
      Brad J. Sadek
      1500 JFK Boulevard, Suite 220
      Philadelphia, PA 19102
      215-545-0008
      michael@sadeklaw.com

**Background**

The Debtor is a Pennsylvania limited liability company formed in 2015. That same year, the Debtor acquired two residential properties: 3125 North Marston Street and 5909 Windsor Avenue, both located in Philadelphia. The properties are currently rented and generate regular rental income. However, various challenges over the past several years led to the Debtor falling behind on its obligations to secured creditors.

As a result, the Debtor has elected to pursue a liquidation strategy through this bankruptcy case. The Debtor has prepared a liquidation analysis to demonstrate that the Plan offers creditors a return equal to or greater than what they would receive in a chapter 7 case. By avoiding the costs of a chapter 7 trustee and maintaining control over the liquidation process, the Plan preserves value and provides a more efficient and predictable result. The liquidation analysis is provided in Exhibit A, and a cash flow projection is provided in Exhibit B.

**Article 1**
**Summary**

This Plan of Liquidation under chapter 11 of Title 11, United States Code, proposes to pay creditors of the Debtor from liquidation of assets.

The Plan provides for:       1 class of priority claims;
                                  2 classes of secured claims;
                                  1 class of non-priority unsecured claims; and
                                  1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

**Article 2**
**Classification of Claims**

(a)     **Class 1.** All allowed claims entitled to priority under 11 U.S.C. § 507(a), except administrative expense claims under 11 U.S.C. § 507(a)(2), and priority tax claims under 11 U.S.C. § 507(a)(8).

(b)     **Class 2.** The claims of Philadelphia Federal Credit Union, to the extent that they are secured by real property located at 5909 Windsor Avenue and 3125 North Marston Street in Philadelphia, Pennsylvania.

(c)     **Class 3.** The claims of the City of Philadelphia, to the extent that they are secured by tax liens on real property located at 5909 Windsor Avenue and 3125 North Marston Street in Philadelphia, Pennsylvania.

(d)     **Class 4.** All non-priority unsecured claims allowed under 11 U.S.C. § 502.

(e)     **Class 5.** Equity interests of the Debtor.

**Article 3**
**Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees**

(a)     **Unclassified Claims.** Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

(b)     **Administrative Expense Claims.** Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

(c)     **Priority Tax Claims.** Each holder of a priority tax claim will be paid consistent with 11 U.S.C. § 1129(a)(9)(C).

(d)     **Statutory Fees.** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been paid or will be paid on the effective date.

**Article 4**
**Treatment of Claims and Interests**

Claims and interests will be treated as follows under this Plan:

| Class | Description | Impairment | Treatment |
| --- | --- | --- | --- |
| 1 | Priority claims (excluding those in Article 3) | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. |

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | Secured mortgage claims of Philadelphia Federal Credit Union | Impaired | Upon the sale of each property, the net proceeds shall be paid to the holder of the secured claim associated with that property, up to the allowed amount of its secured claim. Upon receipt of the sale proceeds and satisfaction of the allowed secured claim attributable to the sold property, the lien shall be deemed released solely with respect to that property. Any deficiency shall be treated as a Class 4 unsecured claim. |
| 3 | Secured tax claims of the City of Philadelphia | Impaired | Upon the sale of each property, the corresponding secured tax claim of the City of Philadelphia shall be paid in full from the sale proceeds. The City shall retain its lien until paid in full. |
| 4 | Non-priority unsecured creditors | Impaired | These creditors shall receive a pro rata distribution of the net proceeds remaining after payment of administrative and secured claims. The amount of the distribution will depend on the sale proceeds and the allowed amount of claims. |
| 5 | Equity security holders of the Debtor | Impaired | Existing equity interests shall be retained only to the extent permitted under 11 U.S.C. § 1129(b). |

**Article 5**
**Allowance and Disallowance of Claims**

(a)  **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed, and as to which either:

   (i)   a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

   (ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

(b)  **Delay of Distribution.** No distribution will be made on account of a disputed claim unless such claim is allowed.

(c)  **Settlement of Dispute.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Fed. R. Bankr. P. 9019.

**Article 6**
**Provisions for Executory Contracts and Unexpired Leases**

The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date, except for residential tenant leases, which will continue on a month-to-month basis until lawfully terminated. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty-one days after the date of the order confirming this Plan.

> **Article 7**
> **Means for Implementation of the Plan**

(a) **Funding.** This Plan will be funded by the sale of the Debtor's real properties and rents paid by tenants of the properties.

(b) **Property Sale Timeline.** The Debtor must complete the sale of all properties within 365 days after the Effective Date.

(c) **Adequate Protection.** Until each property is sold, the Debtor must:

   (i) make monthly adequate protection payments of $1,460.00 to Philadelphia Federal Credit Union, beginning on the first day of the month following the Effective Date and continuing on the first day of each month thereafter until all properties have been sold;

   (ii) timely pay all post-petition property tax obligations;

   (iii) maintain insurance coverage on each property, listing the secured creditor as loss payee; and

   (iv) preserve the condition and value of the property and refrain from any waste or use that would impair its value.

(d) **Sale Procedure.** The Debtor must seek Court approval of each proposed sale of real property under this Plan.

(e) **Application of Sale Proceeds.** Upon the sale of each property:

   (i) the Class 2 secured claim of Philadelphia Federal Credit Union associated with that property shall be paid up to the allowed amount of its secured claim;

   (ii) the Class 3 secured tax claim of the City of Philadelphia associated with that property shall be paid in full;

   (iii) any remaining net proceeds shall be applied in accordance with the treatment of Class 4 unsecured claims; and

   (iv) any deficiency balance owed to Philadelphia Federal Credit Union shall be treated as a Class 4 unsecured claim.

(f) **Trustee Plan Payments.** Starting on the effective date and then monthly at the end of each month the Debtor will pay within fifteen (15) days the aggregate disposable income to the Subchapter V Trustee for disbursement consistent with this plan. In connection with each monthly disbursement date, the Debtor shall deliver to the Subchapter V Trustee (collectively, the "post-petition obligations"):

   (i) a report setting forth the calculation of the disposable income distributable to creditors;

   (ii) a copy of the Debtor's bank account statements and any other backup documentation reasonably requested by the Subchapter V Trustee to confirm the propriety of the disposable income calculation; and

    (iii)    a check payable to "Holly Smith Miller, Subchapter V Trustee for the Estate of J McCloud Realty LLC" in the amount of the disposable income.

If the Debtor fails to comply any of its post-petition obligations or if Subchapter V Trustee disagrees with the Debtor's disposable Income calculation, he and the Debtor shall work collaboratively to resolve any such dispute, the failure of which shall give rise to the right of the Subchapter V Trustee to file with the court a notice of dispute with respect to the disposable income calculation and thereby enabling the Subchapter V Trustee or any other party in interest to seek appropriate relief from the court. The Subchapter V Trustee shall have the right to retain from the amounts paid to him by the Debtor fees based on the actual hours worked based on our standard hourly rate on account of the time and services devoted by the Subchapter V Trustee to the services required above.

Payments made pursuant to the plan that are unclaimed after six months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address. Provided that the plan distribution was sent to the claimant's last known address on the claims register, unclaimed funds shall constitute an abandonment of the claim and become the property of the Debtor or the entity acquiring the assets of the Debtor under the plan (as applicable).

(g) **Surplus Distribution.** After satisfaction of all allowed secured, priority, unsecured, and administrative claims under the Plan, all remaining funds shall be distributed to the Debtor's equity interest holders.

(h) **Default.** The following events will constitute a material default under the Plan:

    (i)    failure to sell the property within the time prescribed by § 7(b); or

    (ii)    failure to comply with any requirements of § 7(c).

### Article 8
### Default Remedies

(a) **Remedies Available to Subchapter V Trustee.** Notwithstanding any provision of this plan, if the Debtor fails to perform any post-petition obligation to the Subchapter V Trustee, the Subchapter V Trustee may give written notice of the default (the "default notice") to the Debtor by first-class mail, postage prepaid, on or after the fifteenth (15th) day following the default and promptly file a copy of the default notice electronically on the case docket.

The Debtor shall have thirty-five (35) days from the issuance of a default notice (the "notice period") to cure all defaults. If the Debtor fails to cure all defaults within any notice period, the Subchapter V Trustee may certify default to the court. Upon certification of default by the Subchapter V Trustee, the court may enter an order converting this case to chapter 7 without further notice and hearing.

(b) **Remedies Available to Secured Creditors.** If the Debtor defaults on its obligations in the manner contemplated by § 7(h), any secured creditor may give written notice of the default (the "default notice") to the Debtor by first-class mail, postage prepaid, on or after the fifteenth (15th) day following the default and promptly file a copy of the default notice electronically on the case docket.

The Debtor shall have thirty-five (35) days from the issuance of a default notice (the "notice period") to cure all defaults. If the Debtor fails to cure all defaults within any notice period, the Subchapter V Trustee may certify default to the court. Upon certification of default by the Subchapter V Trustee, the court may enter an order granting the secured creditor relief from the automatic stay.

|   |   |
|---|---|
|   | If relief is granted under this subsection and this case is subsequently dismissed for any reason, the Debtor will be barred from filing a new bankruptcy petition in any jurisdiction for a period of 180 days from the date of dismissal. |

**Article 9**
**General Provisions**

(a) **Definitions and Rules of Construction.** The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in Title 11 are used in this Plan.

(b) **Effective Date.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the confirmation order. If a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated

(c) **Vesting of Property.** On the Effective Date, all property of the estate will revest in the Debtor.

(d) **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

(e) **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

(f) **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

(g) **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law, regulation, or rule, the laws of the State of Pennsylvania govern this Plan and all agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

(h) **Corporate Governance.** The Debtor shall not issue nonvoting equity securities. The articles of incorporation shall provide for an appropriate distribution of voting power among all classes of voting equity securities, and, in the case of any class of equity securities having a preference over another class with respect to dividends, shall include adequate provisions for the election of directors by the holders of such preferred class in the event of a default in the payment of such dividends.

**Article 10**
**Discharge**

The Debtor will not receive any discharge of debt in this bankruptcy case.

**Article 11**
**Dissolution**

Upon substantial consummation of the Plan, and after all assets have been administered and all allowed claims have been paid or otherwise provided for, the Debtor shall be deemed dissolved upon entry of a final decree closing the case, without the necessity of further corporate action.

**Article 12**
**Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction after confirmation of this Plan to the extent permitted by law to interpret, enforce, or modify the Plan; resolve objections to claims and disputes concerning distributions; enter orders related to the sale of property or final dissolution of the Debtor; and issue a final decree closing the case.

**Exhibit A**
**Liquidation Analysis**

| This Plan | | Chapter 7 | |
|---|---|---|---|
| Estimated Value of Assets | $310,000.00 | Estimated Value of Assets | $310,000.00 |
| Secured Claims | $242,860.00 | Secured Claims | $242,860.00 |
| Estimated Sale Costs (10%) | $31,000.00 | Estimated Sale Costs (10%) | $31,000.00 |
| Subchapter V Trustee Fees | $2,000.00 | Trustee Commission | $15,393.00 |
| Attorney's Fees | $5,000.00 | Administrative Expenses | $10,000.00 |
| **Funds Available for Unsecured Claims** | **$29,140.00** | **Funds Available for Unsecured Claims** | **$10,747.00** |

**Exhibit B**
**Cash Flow Projection**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 |
|---|---|---|---|---|---|---|
| **Receipts** | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| **Adequate Protection Payments** | ($1,460.00) | ($1,460.00) | ($1,460.00) | ($1,460.00) | ($1,460.00) | ($1,460.00) |
| **Insurance** | ($225.00) | ($225.00) | ($225.00) | ($225.00) | ($225.00) | ($225.00) |
| **Property Tax** | ($115.00) | ($115.00) | ($115.00) | ($115.00) | ($115.00) | ($115.00) |
| **Net Cash Flow** | **$1,200.00** | **$1,200.00** | **$1,200.00** | **$1,200.00** | **$1,200.00** | **$1,200.00** |

| | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|
| **Receipts** | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| **Adequate Protection Payments** | ($1,460.00) | ($1,460.00) | ($1,460.00) | ($1,460.00) | ($1,460.00) | ($1,460.00) |
| **Insurance** | ($225.00) | ($225.00) | ($225.00) | ($225.00) | ($225.00) | ($225.00) |
| **Property Tax** | ($115.00) | ($115.00) | ($115.00) | ($115.00) | ($115.00) | ($115.00) |
| **Net Cash Flow** | **$1,200.00** | **$1,200.00** | **$1,200.00** | **$1,200.00** | **$1,200.00** | **$1,200.00** |