## ◆ Exhibit A – Inflated Invoice and Email Correspondence Regarding Exhausted Retainer

Exhibit A includes a copy of the invoice submitted by Attorney Sadek, along with email correspondence that raises serious concerns about billing practices and refusal to continue legal work after exhausting the retainer.

**Included in this exhibit:**

1. **Invoice** showing inflated or questionable charges, including fees for services that were not performed or were advertised as free (e.g., consultation fees, despite being listed as complimentary on the firm's website).

2. **Email from Sadek Law Office** confirming that the attorney would not perform further work on the case due to the exhaustion of retainer funds. This statement conflicts with the amount declared to the court ($6,700) versus the actual amount paid by the Debtor ($12,500), and suggests a refusal to fulfill remaining legal responsibilities without further payment.

This exhibit demonstrates:

- Improper or unethical billing practices;
- A misrepresentation of services performed;
- Refusal to act in the client's best interest after payment had already been made;
- Discrepancy between billing to client vs. reporting to court.

---

## ◆ Exhibit B – Motion of the United States Trustee to Dismiss or Convert to Chapter 7 and False Statements by Counsel Regarding Bank Account

Exhibit B contains the motion filed by the United States Trustee requesting dismissal or conversion of the Debtor's case to Chapter 7. In this motion, Attorney Brad Sadek falsely stated that the Debtor, **J McCloud Realty LLC**, does **not have a business bank account**.

This statement is inaccurate and contradicted by written communications and account details provided herein.

◆ **Evidence Included in Exhibit B:**

1. **Email Correspondence Between Debtor and Lisa LaPenna (Legal Counsel for Philadelphia Federal Credit Union – PFCU)**
   These communications confirm that:
   - J McCloud Realty LLC holds an **active business bank account** with PFCU;
   - While PFCU **does provide a digital access system**, the Debtor was **restricted from online access** to the account;
   - These restrictions were communicated to PFCU, and to Attorney Sadek, citing the Debtor's **residency in Hawaii** as a barrier to in-person banking in Pennsylvania;
   - The funds in this account were being **used for legal retainer fees** and were **not hidden or unaccounted for**.
2. **Email Communications Between Debtor and Attorney Brad Sadek**
   - The Debtor informed Mr. Sadek of the existing PFCU business account;
   - Mr. Sadek acknowledged receipt of payments from **rental income** used to fund legal services;
   - Despite this, he submitted an inaccurate claim to the Court regarding the Debtor's bank account status.

**Purpose of This Exhibit:**

This exhibit establishes that:

- The Debtor **does possess a valid business banking account**;
- **Counsel misrepresented this fact** to the Court in a material way that influenced proceedings;
- The **Trustee's motion was partially based on false information**, affecting the fairness of the case;
- This misrepresentation contributed to the **overall pattern of misconduct** and demonstrates negligence or possible intentional harm by the attorney.

---

## Exhibit B – Invoices from Former Attorney

- All invoices submitted by the attorney, especially those showing:
  - Charges for services not performed (e.g., stay relief motion).
  - Charges for consultations listed as "free" on the firm's website.
  - Review of mortgage terms (May 8th invoice) contradicting claim that he was unaware of the assignment of rents clause.

---

## Exhibit C – Email Correspondence Requesting Appeal for Relief of Stay and Objection to Chapter 7 Conversion

This exhibit includes email communications between the Debtor and legal counsel Brad Sadek regarding the Debtor's **urgent requests for two specific legal actions**:

1. **Filing an appeal for the relief of the automatic stay**
2. **Filing an objection or appeal to the conversion of the case from Chapter 11 to Chapter 7**

### Key Contents of Exhibit C:

- Emails from the Debtor dated prior to the appeal deadline, explicitly requesting that Mr. Sadek file:
  - A motion to appeal the **relief of stay** denial, and
  - An **objection to the conversion** to Chapter 7
- Counsel's response email which states:

*"You may file an objection, but we will not be doing so."*

This email constitutes **clear refusal to perform critical legal actions** despite the attorney-client agreement and despite the time-sensitive nature of the requests.

◈ **Relevance and Impact:**

- Mr. Sadek's refusal to act directly led to **missed legal deadlines**, putting the Debtor at severe risk of losing income-generating properties (e.g., 5909 Windsor Ave and 3145 Marston St).
- The refusal to pursue these actions **violates reasonable expectations of representation**, especially after the Debtor had already paid significant legal fees.
- This behavior reflects a **pattern of abandonment, negligence, and bad faith**, further justifying sanctions, a request for attorney fee reimbursement, and a full review of counsel's conduct by the Court.

---

## ◈ Exhibit D – Website Screenshot (Proof of Free Consultation Claim)

- Screenshot of the law firm's website where it states that consultations are free. Use this to challenge the consultation billing listed on exaggerated invoice

## ◆ Exhibit E – Bank Records and Counsel Misrepresentation Regarding Funds

**Date: May–June 2025**

This exhibit provides evidence that **J McCloud Realty LLC maintains a valid business bank account** with **Philadelphia Federal Credit Union (PFCU)** and that **funds used to pay legal fees originated from the Debtor's business assets**, contrary to counsel's false statements to the U.S. Trustee and the court.

---

### ◆ Contents of Exhibit E:

1. **Email from PFCU (May 2025)**
   - Informs the Debtor of a new billing statement for the business account, accessible only via online login.
   - Confirms that **an active account exists** under J McCloud Realty LLC.
2. **Screenshot of Failed Login Attempt (May 2025)**
   - Shows the PFCU portal message: "**Account is on hold**."
   - Verifies that while the account is active, the **Debtor is currently locked out of online access** due to technical restrictions and geographic challenges (Debtor resides in Hawaii; PFCU operates only in Pennsylvania).
3. **Statement on Physical Rent Funds**
   - Rent payments were collected and **safely stored in-person** due to previous hacking concerns and the inability to access the online banking system.
   - These funds were reserved for business operations and legal fees.
4. **Email from Counsel A. Sadek**
   - Confirms that he was **aware of the source of funds** being from rent payments held by the Debtor.
   - Acknowledges that he **should have asked the court's permission** to use these funds for legal fees—proving he understood they were **Debtor-owned assets**, not third-party contributions as later claimed.

5. **Contradictory Statement by Counsel to Court**

    - In statements made to the U.S. Trustee (Exhibit B), counsel **claimed the Debtor had no bank account** and implied that the legal fees were paid by an unrelated individual.

    - These claims are directly contradicted by counsel's own earlier emails and invoice language.

---

**Relevance and Legal Implication:**

- **Misrepresentation**: Counsel falsely informed the court and U.S. Trustee that the company had no bank account and that funds were not from the Debtor.

- **Breach of Fiduciary Duty**: Counsel acknowledged in private email that he should have sought court permission to use Debtor funds for legal fees, suggesting an awareness of potential impropriety.

- **Support for Sanctions and Compensation Objection**: These inconsistencies strengthen the Debtor's objection to the attorney's compensation and justify the request for court sanctions, reimbursement, or disciplinary action.

This exhibit supports the motion to:

- Reverse or reconsider the Chapter 7 conversion;

- Reinstate or approve relief from stay;

- Approve conversion to Chapter 11 or grant voluntary dismissal;

- Sanction or reprimand counsel for misconduct and misrepresentation.

**From:** **J McCloud Realty** jmccloudrealty@gmail.com
**Subject:** Fwd: Objection to withdrawal as counsel
**Date:** June 12, 2025 at 12:33 PM
**To:** Khalilah Boyd khalilahboyd@me.com

Sent from my iPhone

Begin forwarded message:

> **From:** Brad Sadek <brad@sadeklaw.com>
> **Date:** June 4, 2025 at 4:45:33 PM EDT
> **To:** J McCloud Realty <jmccloudrealty@gmail.com>
> **Cc:** Michael Assad <michael@sadeklaw.com>
> **Subject: Re: Objection to withdrawal as counsel**
>
> You may file an objection, but we will not be doing so.
>
> ---------------------
> Brad J. Sadek, Esquire*
> Sadek Law Offices, LLC
> Phone (PA): 215-545-0008
> Phone (NJ): 856-890-9003
>
> *Licensed in Pennsylvania and New Jersey
>
> This message may contain privileged information. If you are not the intended recipient of this electronic message, please contact the sender immediately at brad@sadeklaw.com or by phone at 215-545-0008 or 856-890-9003.
>
> On Wed, Jun 4, 2025 at 4:42 PM J McCloud Realty <jmccloudrealty@gmail.com> wrote:
> Hi Mike and Brad
>
> I am writing to you because I do not authorize or consent to your motion to withdraw as my counsel, and I believe your withdrawal at this stage would severely harm my interests and compromise my ability to move forward in this case.
>
> You are deeply familiar with the facts, filings, and outstanding issues in my case, and your removal would create an immediate gap in legal representation — especially while key matters remain unresolved, including:
>
> - Trustee communications post-conversion,
> - Review of your final fee application,
> - Return or accounting of retainer funds,
> - Potential legal consequences regarding remaining creditors.
>
> And more importantly my appeals for relief of stay and the appeal to the conversion from ch11 to ch 7
>
> For these reasons, I am requesting that you immediately file an objection to your own motion to withdraw, clearly stating that:
>
> - The Debtor did not consent to the withdrawal,
> - The withdrawal would be prejudicial to the Debtor, and
> - You will continue to represent J McCloud Realty LLC unless or until the Court approves a substitute or otherwise orders withdrawal.
>
> Please email me back to confirm that you will comply with this request. The deadline to object the motion is dated tomorrow June 5, 2025.
>
> Sincerely
> Jamirah

This message may contain privileged information. If you are not the intended recipient of this electronic message, please contact the sender immediately at brad@sadeklaw.com or by phone at 215-545-0008 or 856-890-9003.

[Quoted text hidden]

---

**Michael Assad** <michael@sadeklaw.com> Wed, Jun 4, 2025 at 5:15 PM
To: J McCloud Realty <jmccloudrealty@gmail.com>
Cc: brad@sadeklaw.com

Jamirah,

Your email is not a sufficient objection to the motion under the rules of court. Attached is the notice that explains how you must file an objection. If you want to file an objection, you must send it to the clerk of court at the address below. I suggest that you send it by overnight mail, FedEx, or UPS.

U.S. Bankruptcy Court
Robert N.C. Nix Sr. Federal Courthouse
900 Market Street, Suite 400
Philadelphia, PA 19107.

Mike Assad
Attorney at Law
Sadek Law Offices, LLC
Phone (PA): 215-545-0008
Phone (NJ): 856-890-9003

On Wed, Jun 4, 2025 at 4:42 PM J McCloud Realty <jmccloudrealty@gmail.com> wrote:
[Quoted text hidden]

---

**Notice of Motion.pdf**
88K

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Thu, Jun 5, 2025 at 1:25 AM
To: Michael Assad <michael@sadeklaw.com>

Mike

I read the instructions and it states that me or my attorney has to file a motion to object by May 5, 2025 and as of today you are still representing my company . I firmly ask that you file an objection to you withdrawing as my attorney . You know I am deployed with my husband in Hawaii and I don't have time to get representation in such short notice. Pl[illegible] e uphold your duty as my attorney and file my objection. Let the judge decide if you should be with[illegible] because you agreed that you would represent my company I am telling you [illegible] e especially when you have not taken the necessary actions to help sa[illegible]

On Jun 4, 2025, at 5:15 PM, Michael Assad <michael@sadekla[illegible]

[Quoted text hidden]
<Notice of Motion.pdf>

Employment App (DOES NOT DISCLOSE RETAINER $12000)

---

**Michael Assad** <michael@sadeklaw.com>
To: J McCloud Realty <jmccloudrealty@gmail.com>
Cc: Brad Sadek <brad@sadeklaw.com>

[Quoted text hidden]

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Wed, May 21, 2025 at 8:50 PM
To: info.awestbrook@gmail.com

Sent from my iPhone

Begin forwarded message:

> **From:** Michael Assad <michael@sadeklaw.com>
> **Date:** May 21, 2025 at 4:42:58 PM EDT
> **To:** J McCloud Realty <jmccloudrealty@gmail.com>
> **Cc:** Brad Sadek <brad@sadeklaw.com>
> **Subject: Re: Are you working on my chapter 11 bankruptcy?**
>
> [Quoted text hidden]

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Wed, May 21, 2025 at 9:36 PM
To: info.awestbrook@gmail.com

Sent from my iPhone

Begin forwarded message:

> **From:** J McCloud Realty <jmccloudre
> **Date:** May 21, 2025 at 8:50:31 PM ED
> **To:** info.awestbrook@gmail.com
> **Subject: Fwd: Are you working on n**
>
> [Quoted text hidden]

Voluntarily Dismal ch 7

---

**J McCloud Realty** <jmccloudrealty@gmail.com> , May 22, 2025 at 10:03 AM
To: J McCloud Realty <jmccloudrealty@gmail.co

Good morning Mike

Im am formally requesting a voluntary dismissa ... Bankruptcy. Please review and respond upon receipt.
Thank you

Jamirah

Sent from my iPhone

> On May 21, 2025, at 8:50 PM, J McCloud Realty <jmccloudrealty@gmail.com> wrote:
>
> [Quoted text hidden]

As I explained before, unless you pick option number three and hire a new lawyer, I will attend the hearing tomorrow and represent the company. However, as I have explained already, all I can do at this point is inform the court that there is no defense to dismissal of the case that is valid under the law.

Mike Assad
Attorney at Law
Sadek Law Offices, LLC
Phone (PA): 215-545-0008
Phone (NJ): 856-890-9003

[Quoted text hidden]

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Tue, May 20, 2025 at 12:44 PM
Draft To: Michael Assad <michael@sadeklaw.com>

Mike,

Sent from my iPhone

On May 20, 2025 ...m> wrote:

Voluntary Dismissal ch 11

[Quoted text hidden]

---

**J McCloud Realty** <jmccloudre... Tue, May 20, 2025 at 12:55 PM
To: Michael Assad <michael@sa...

Mike and Brad,

I am formally requesting that you file a voluntary dismissal of the Chapter 11 bankruptcy case filed on behalf of J. McCloud Realty LLC. Additionally, I am requesting a full refund for the services rendered, as I believe you have misrepresented both myself and my company during your representation.

Your invoice includes exaggerated and inaccurate charges for work that was not performed. You were retained to competently advise and represent my company, but your actions and omissions throughout this case reflect otherwise. Specifically:

- You claimed ignorance of the assignment of rents provision, yet that information was disclosed by opposing counsel upon the emergency filing. If you had reviewed the promissory note carefully, this should have been apparent to you.
- You advised filing a Chapter 13 case despite knowing the bank and its counsel were unwilling to postpone the sheriff's sale. This action resulted in unnecessary legal fees and a filing that should never have occurred.
- Your invoice includes charges for a consultation that allegedly took place before you were officially retained—on the morning of May 6, 2025. Billing for services before formal engagement is both unethical and unacceptable.
- Your courtroom statements suggested J. McCloud Realty LLC was operating without a bank account, without clarifying that access had been blocked by the bank. This omission was misleading and detrimental to our case.
- You were provided with relevant information, including the existence of a bank account and the need for tenants to use Zelle due to access issues. Your failure to incorporate or communicate this properly is concerning.

Moreover, the duration of phone calls and other communications listed in your invoice do not align with my call logs, which show significantly less time spent.

Given these issues, I believe your conduct fell short of professional standards, and I am requesting a full refund. If this matter is not resolved promptly, I will have no choice but to file a formal complaint with the appropriate disciplinary counsel.

J McCloud Realty <jmccloudrealty@gmail.com>

## Are you working on my chapter 11 bankruptcy?

11 messages

**J McCloud Realty** <jmccloudrealty@gmail.com> Mon, May 19, 2025 at 5:10 PM
To: Michael Assad <michael@sadeklaw.com>, brad@sadeklaw.com

Hi Mike and Brad

I am not sure why you are refusing to return my calls. You gave me a list of things to be completed before May 21, 2025 and I can not do some of them without you. I stated the Business bank account is with PFCU and they will not give me access to the account.Therefore I cannot get bank statements nor close the account.That also stops me from opening the DIP account because it states all bank accounts must be closed before opening this type of account. I was advised by Madison (PFCU representative) to have my lawyer call to request any information regarding J McCloud Realty LLC. The number I was provided is 215-934-3504 . Also I do not like that we are waiting until the last minute to get this done. Because we have not spoken I am also clueless to what actually happened when you attended court last week. I expect you to work with me to present a plan to the bankruptcy court for reconstruction my business. Please call me 215-888-3198 or my mom 610-931-8519 who can handle things in my absence. If you would like to call after normal business hours that is fine I just want to get this done
Sent from my iPhone

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Mon, May 19, 2025 at 5:24 PM
To: rebecca@sadeklaw.com

Hi Rebecca

I am forwarding you this message because Mike is out of the office and I need immediate assistance. Are you able to call the bank to get the necessary documents so I can proceed?
Sent from my iPhone

Begin forwarded message:

> **From:** J McCloud Realty <jmccloudrealty@gmail.com>
> **Date:** May 19, 2025 at 5:11:29 PM EDT
> **To:** Michael Assad <michael@sadeklaw.com>, brad@sadeklaw.c
> **Subject: Are you working on my chapter 11 bankruptcy?**
>
> Hi Mike and Brad
> [Quoted text hidden]

Refusing to work on case ②

---

**Michael Assad** <michael@sadeklaw.com>
To: J McCloud Realty <jmccloudrealty@gmail.com>
Cc: brad@sadeklaw.com

I am sorry that I did not reply sooner, I was out of the office unexpectedly

My emails from last week were straightforward in explaining the problems
explaining my legal advice, which is that I do not believe the company has
point, there are three options, all of which I have made clear to you already:

1. You can accept that the case will be dismissed, and not attend the hearing tomorrow.
2. You can not accept the case will be dismissed, and attend the hearing and be heard by the judge.
3. If you can find a lawyer who does believe that there is a valid defense to dismissal, you can hire that lawyer to represent the company at the hearing instead of me.



**J McCloud Realty <jmccloudrealty@gmail.com>**

# I want you to file an appeal on behalf of J McCloud Realty

8 messages

**J McCloud Realty** <jmccloudrealty@gmail.com> Mon, Jun 2, 2025 at 8:43 AM
To: Michael Assad <michael@sadeklaw.com>, brad@sadeklaw.com

Good morning

I am asking that you file notice of an appeal granting the relief of the stay. The motion to appeal must be done between today and tomorrow to meet the deadlines. I googled reasons why you would appeal and basically it states we need to address the accusations. Please review attached :As we discussed , the income from my business comes from the rent therefore I need the income to be able to pay the creditors. If you allow the property to stay as is (going to sheriff sale in July) there is no value left in the business to be able to pay back my SBA loan. Also I really would like for you to strategize and appeal the conversion from ch11 to ch7 . This is where Brad would step in and appeal under negligence on behalf of Mike. I did not hire Sadek Law because you were the only lawyer in PA you were recommended by another reputable lawyer. I hired you because on our initial conversation I laid out everything that was transpiring with PFCU including having a bank account that they stop giving me access to. Just to be clear, I am deployed with my husband who's in the army. I explained per our initial conversation that I am a victim of fraud that is how the mortgage payments got behind initially. I was told by law enforcement that I had to file a police report in the county where the crime took place which I hadn't had the chance to do as of yet. That's how my mom and I came up with the idea to document via Google docs ( which detail what we do with the business money) I also di... you that I still had the rent money in a personal safe inPA since PFCU would not allow u... gage payments and I did not want to leave money in the bank not knowing if th... wed you several conversations between PFCU and myself includin... ng if we could voluntarily have the tenants pay the mortgage directly ... ment of rents and they too were also aware that I was a victim of fraud, ... tated the judge was angry about a few things that wasn't properly ... that I am a victim of fraud, my company does have a bank account b... se zelle with receipts documenting both dates and rent amount. It w... I still do not understand why Mike chose to use EQUITY IN THE PROPE... filing Hardship like we discussed and then mapping out the plan to ... ties. I even suggested getting a CMA to show proof the properties still ... w this. A lot of valuable information was withheld from the judge which ... hired you painted a picture to reconstruct the company and t... et back on track paying monthly. I stated that I would be able to do that ... t u have a conversation with my mom or myself on how to fix this mes... nt J McCloud Realty LLC and I am asking that you continue to do s... ply to this email before 12 pm today with what you are going to do as ... vard. Thank you In advance

Appeal Request
Jun 2 2025

Sent from my iPhone

**image1.png**
327K

**Michael Assad** <michael@sadeklaw.com> Mon, Jun 2, 2025 at 9:12 AM

To: J McCloud Realty <jmccloudrealty@gmail.com>
Cc: brad@sadeklaw.com

Good morning,

As we have explained previously, we have filed a motion to [obscured] earing will be held next week on that motion, and you are welcome to brin[obscured] ion. Our fees in this case have been earned. We highly suggest that [obscured]

We will file a motion today to extend the time to fil[obscured] you a copy of the motion once it is filed.

Refusal to File appeal

Mike Assad
Attorney at Law
Sadek Law Offices, LLC
Phone (PA): 215-545-0008
Phone (NJ): 856-890-9003

On Mon, Jun 2, 2025 at 8:43AM J McCloud Realty <jmcclou[obscured]

Good morning

I am asking that you file notice of an appeal granting the relief [obscured] otion to appeal must be done between today and tomorrow to meet the deadlines. I googled reasons [obscured] uld appeal and basically it states we need to address the accusations. Please review attached :As we discuss[obscured], the income from my business comes from the rent therefore I need the income to be able to pay the creditors. If you allow the property to stay as is (going to sheriff sale in July) there is no value left in the business to be able to pay back my SBA loan. Also I really would like for you to strategize and appeal the conversion from ch11 to ch7 . This is where Brad would step in and appeal under negligence on behalf of Mike. I did not hire Sadek Law because you were the only lawyer in PA you were recommended by another reputable lawyer. I hired you because on our initial conversation I laid out everything that was transpiring with PFCU including having a bank account that they stop giving me access to. Just to be clear, I am deployed with my husband who's in the army. I explained per our initial conversation that I am a victim of fraud that is how the mortgage payments got behind initially. I was told by law enforcement that I had to file a police report in the county where the crime took place which I hadn't had the chance to do as of yet. That's how my mom and I came up with the idea to document via Google docs ( which detail what we do with the business money) I also disclosed to you that I still had the rent money in a personal safe inPA since PFCU would not allow us to continue to make mortgage payments and I did not want to leave money in the bank not knowing if the thieves would gain access again. I showed you several conversations between PFCU and myself including one specifically between Zach and my mom asking if we could voluntarily have the tenants pay the mortgage directly but they declined . The bank knew they had assignment of rents and they too were also aware that I was a victim of fraud, why wouldn't they take the rent? Anyway as you stated the judge was angry about a few things that wasn't properly disclosed but I believe if Mike would have disclosed that I am a victim of fraud, my company does have a bank account but was denied access and as a result the tenants use zelle with receipts documenting both dates and rent amount. It would not look as if my company is not ran properly. I still do not understand why Mike chose to use EQUITY IN THE PROPERTY for your reason we filed charges 11 instead of filing Hardship like we discussed and then mapping out the plan to get back on track including the value of the properties. I even suggested getting a CMA to show proof the properties still had equity Mike advised we would not need to show this. A lot of valuable information was withheld from the judge which in turn gave us a horrible outcome. When you were hired you painted a picture to reconstruct the company and that included a plan to get the arrears current and get back on track paying monthly. I stated that I would be able to do that via a family member within the year. I am asking that u have a conversation with my mom or myself on how to fix this mess. As of today Sadek law has been paid to represent J McCloud Realty LLC and I am asking that you continue to do so until you are granted a motion not to. PLEASE reply to this email before 12 pm today with what you are going to do as far as the appeals so I can know how to move forward. Thank you In advance

Sent from my iPhone

---

**Michael Assad** <michael@sadeklaw.com> Mon, Jun 2, 2025 at 10:01 AM
To: J McCloud Realty <jmccloudrealty@gmail.com>
Cc: brad@sadeklaw.com

Attached is the motion we have filed requesting that the court extend the time to file an appeal.

Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| J McCloud Realty LLC, *Debtor.* | Case No. 25-11778-amc<br>Chapter 11 |
|---|---|

**Application to Employ Sadek Law Offices LLC as Debtor's Attorney**

Debtor J McCloud Realty LLC respectfully applies to this Court to employ Sadek Law Offices LLC as its attorney in this bankruptcy case under 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014. In support of this Application, the Debtor states as follows:

1. This case was filed under subchapter v of chapter 11 on May 6, 2025.

2. The Debtor remains in possession of its assets and continues to operate its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. The Debtor seeks authority to employ Sadek Law Offices LLC as its bankruptcy counsel, effective as of the petition date, to advise the Debtor in connection with this chapter 11 case.

4. The Debtor has selected SLO because of the firm's ability to provide competent and efficient representation.

5. The Debtor requires the services of SLO to advise it regarding its rights, duties, and obligations under the Bankruptcy Code; assist in the preparation of required filings including schedules, the statement of financial affairs, and monthly operating reports; represent the Debtor in all matters arising during the administration of the case, including motion practice and contested matters; assist in the formulation and confirmation of a plan of reorganization; and perform such other legal services as may be necessary and in the best interest of the estate.

6. The fees that SLO would charge for services performed, should this Court approve the within application, are based on the following rates: Brad J. Sadek (Attorney) at $475 per hour; Michael I. Assad (Attorney) at $475 per hour; Jennifer Phillips (Paralegal) at $200 per hour; and Rebecca Shatzoff (Paralegal) at $200 per hour. These rates are subject to periodic adjustment.

7. SLO has indicated that it will be able and willing to provide these services for the above rates, with reimbursement of costs and expenses incurred, subject to application to, and approval of, this Court.

8. SLO's pre-bankruptcy services for the Debtor, along with all payments made by the Debtor to SLO, are set forth in the verified statement submitted by SLO in connection with this Application.

9. Based upon SLO's verification accompanying this Application, SLO believes that: (a) it does not hold or represent an interest adverse to the estate, (b) it is a "disinterested person" as contemplated by 11 U.S.C. § 101(14), and (c) its employment is in the best interest of the estate.

10. SLO is not a creditor of the Debtor.

For those reasons, the Court must enter relief in the form of order attached, and further in the Debtor's favor if necessary and proper under the law.

Date: May 8, 2025

**J MCCLOUD REALTY LLC**
*Debtor*

By:______________________
Jamirah N. McCloud-Ford
Sole Member

Under our retainer agreement, we bill against the retainer at a rate of $475 per hour. Attached is a current accounting of time expended on this case. It shows that 23.10 hours have been expended on the case, which equals $10,972.50 in fees, and that we paid the court filing fee of $1,738.00. At this time, the total is $12,710.50. That means the retainer has been exhausted and $710 is due. Under the retainer agreement, we would collect that $710 (and all the fees we would earn on the remainder of the case) through the bankruptcy plan if the case continued. If the case is dismissed, the retainer agreement allows us to bill you for the balance, but we do not intend to do so.

Mike Assad
Attorney at Law
Sadek Law Offices, LLC
Phone (PA): 215-545-0008
Phone (NJ): 856-890-9003

Exibit D

[Quoted text hidden]

**McCloud Invoice as of 5:15.pdf**
50K

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Wed, May 21, 2025 at 3:35 PM
To: info.awestbrook@gmail.com

Sent from my iPhone

Begin forwarded message:

> **From:** Michael Assad <michael@sadeklaw.com>
> **Date:** May 15, 2025 at 6:47:26 PM EDT
> **To:** J McCloud Realty <jmccloudrealty@gmail.com>
> **Cc:** Brad Sadek <brad@sadeklaw.com>
> **Subject: Re: Important Bankruptcy Update**
>
> [Quoted text hidden]

**McCloud Invoice as of 5:15.pdf**
50K

---

**J McCloud Realty** <jmccloudrealty@gmail.com> Fri, May 23, 2025 at 8:49 AM
To: info.awestbrook@gmail.com

Sent from my iPhone

Begin forwarded message:

> **From:** J McCloud Realty <jmccloudrealty@gmail.com>
> **Date:** May 15, 2025 at 5:38:28 PM EDT
> **To:** Michael Assad <michael@sadeklaw.com>
> **Subject: Re: Important Bankruptcy Update**

| Date | Staff | Description | Hours | Fee |
|---|---|---|---|---|
| May 8, 2025 | MIA | Phone call with Khalila to discuss MFR. | 0.30 | $142.50 |
| May 9, 2025 | MIA | Prepared email to UST re: scheduling of 341 meeting. | 0.10 | $47.50 |
| May 8, 2025 | MIA | Prepared chapter 11 plan | 3.00 | $1,425.00 |
| May 9, 2025 | MIA | Prepared application to employ attorney | 1.00 | $475.00 |
| May 9, 2025 | MIA | Phone conversation with UST and SubV trustee | 0.30 | $142.50 |
| May 12, 2025 | MIA | Email to debtor's principal re: motion for relief and plan. | 0.30 | $142.50 |
| May 12, 2025 | MIA | Prepared email to UST re: proof of insurance. | 0.20 | $95.00 |
| May 12, 2025 | MIA | Prepared email to debtor re: info needed for schedules. | 0.30 | $142.50 |
| May 12, 2025 | MIA | Phone call with Khaliah | 0.30 | $142.50 |
| May 12, 2025 | MIA | Phone call with debtor's principal | 0.60 | $285.00 |
| May 12, 2025 | MIA | Prepared Amended Matrix | 0.20 | $95.00 |
| May 12, 2025 | MIA | Prepared email to debtor's principal re: mortgage payments and DIP accounts. | 0.30 | $142.50 |
| May 13, 2025 | MIA | Prepared email to debtor's principal re: defense of motion | 0.30 | $142.50 |
| May 14, 2025 | MIA | Represented debtor at hearing on motion for relief. | 0.50 | $237.50 |
| May 14, 2025 | MIA | In-person discussion with UST re: potential motion to dismiss | 0.10 | $47.50 |
| May 14, 2025 | MIA | Reviewed motion to dismiss filed by UST | 0.20 | $95.00 |
| May 14, 2025 | MIA | Reviewed emails from UST, lender, and SubV trustee | 0.10 | $47.50 |
| May 14, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | 0.50 | $237.50 |
| May 15, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | 0.30 | $142.50 |
| May 15, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | 0.30 | $142.50 |
| May 15, 2025 | BJS | Phone call with debtor's principal re: motion to dismiss | 0.20 | $95.00 |
| May 15, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | 0.20 | $95.00 |

**Total Fees $10,972.50**

Total Hours 23.10

| | | | | |
|---|---|---|---|---|
| May 6, 2025 | | Chapter 11 Filing Fee | | $1,738.00 |

**Total Expenses $1,738.00**

**Grand Total $12,710.50**

| Date | Staff | Description | Hours | Fee |
|---|---|---|---|---|
| February 24, 2025 | BJS | Initial consultation with Debtor's principal to discuss objectives of representation and possible legal solutions | 0.50 | $237.50 |
| February 25, 2025 | MIA | Phone conversation with associate of debtor to discuss possible legal solutions, gathered more information and explained potential paths forward. | 1.00 | $475.00 |
| April 29, 2025 | BJS | Phone conversation with associate of debtor to discuss upcoming sheriff sale and potential bankruptcy case. | 0.50 | $237.50 |
| April 30, 2025 | MIA | Phone conversation with associate of debtor to discuss potential bankruptcy case, answered questions and gathered information. | 0.60 | $285.00 |
| May 1, 2025 | MIA | Phone conversation with debtor's principal to discuss potential bankruptcy case, answered questions and gathered information. | 0.50 | $237.50 |
| May 5, 2025 | MIA | Phone conversation with associate of debtor to discuss upcoming sheriff sale of property. | 0.20 | $95.00 |
| May 5, 2025 | MIA | Phone conversation with debtor's principal and two of debtor's associates to discuss upcoming sheriff sale of property. | 0.50 | $237.50 |
| May 5, 2025 | BJS | Phone conversation with debtor's associate and principal to discuss potential bankruptcy case. | 1.50 | $712.50 |
| May 5, 2025 | MIA | Internal conference with BJS to discuss strategy for potential bankruptcy case. | 0.50 | $237.50 |
| May 5, 2025 | MIA | Internal conference with MA to discuss strategy for potential bankruptcy case. | 0.50 | $237.50 |
| May 5, 2025 | MIA | Prepared bankruptcy petition. | 1.00 | $475.00 |
| May 6, 2025 | MIA | Filed bankruptcy petition | 0.20 | $95.00 |
| May 6, 2025 | MIA | Prepared email to lender to stop sheriff sale. | 0.10 | $47.50 |
| May 6, 2025 | MIA | Prepared chapter 11 requirements letter | 0.50 | $237.50 |
| May 6, 2025 | MIA | Prepared email to debtor's principal re: chapter 11 requirements and insurance | 0.20 | $95.00 |
| May 7, 2025 | MIA | Reviewed order requiring documents filed by clerk of court. | 0.10 | $47.50 |
| May 7, 2025 | MIA | Reviewed IDI email from UST | 0.10 | $47.50 |
| May 7, 2025 | MIA | Prepared email to UST re IDI | 0.10 | $47.50 |
| May 7, 2025 | MIA | Prepared email to Debtor re IDI | 0.10 | $47.50 |
| May 7, 2025 | MIA | Searched various public record sources including court dockets, water lien database, property tax database, etc. for lawsuits, liens, etc. | 1.00 | $475.00 |
| May 7, 2025 | MIA | Drafted suggestions of bankruptcy for state court cases | 0.50 | $237.50 |
| May 7, 2025 | MIA | Prepared email to UST and client re: noticing party address for UST on insurance. | 0.10 | $47.50 |
| May 7, 2025 | MIA | Reviewed proofs of insurance provided by debtor. | 0.10 | $47.50 |
| May 7, 2025 | MIA | Research re: subchapter v plan of liquidation | 1.30 | $617.50 |
| May 8, 2025 | MIA | Email to UST re: insurance | 0.10 | $47.50 |
| May 8, 2025 | MIA | Reviewed mortgage foreclosure documents. | 1.00 | $475.00 |
| May 8, 2025 | MIA | Phone call with Khalilah to discuss rental income. | 0.20 | $95.00 |
| May 8, 2025 | MIA | Reviewed motion for relief from stay filed by mortgage company. | 0.50 | $237.50 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| J McCloud Realty LLC, | § | Case No. 25-11778-AMC |
| Debtor. | § | |

**MOTION OF THE UNITED STATES TRUSTEE TO DISMISS DEBTOR'S CASE OR CONVERT TO CHAPTER 7**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, hereby moves (this "Motion") for entry of an order, pursuant to section 1112(b) of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code"), dismissing the above-captioned case or converting the case to chapter 7. In support of this Motion, the U.S. Trustee states as follows:

**JURISDICTION**

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the Eastern District of Pennsylvania issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Motion.

2. Under Bankruptcy Code section 307, the U.S. Trustee has standing to be heard on the Motion.

3. The U.S. Trustee consents to the entry of a final order or judgment by the court if it is determined that the court, absent consent of the parties, cannot

enter a final order or judgment consistent with Article III of the United States Constitution. *See* L.B.R. 9014-3(b)(2).

## BACKGROUND AND FACTS

4. On May 6, 2025 (the "Petition Date"), J McCloud Realty LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor has not filed all the documents required by rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including the *Schedules of Assets and Labilities* and *Statement of Financial Affairs*.

6. The Debtor has indicated that it does not have an account at any bank. The Debtor has further indicated that it does not have any cash.

Exibit B

7. Upon information and belief, payment to counsel was made by the Debtor's sole member and not the Debtor, which would be consistent with the indications that the Debtor does not hold any funds or have any bank accounts and further indicates that the corporate funds may be under the control of the individual rather than the Debtor. *See Declaration of Brad J. Sadek in Support of Application to Employ Sadek Law Offices LLC as Attorney for Debtor* (Docket No. 16-2, ¶ 5).

## RELIEF REQUESTED

8. Through this Motion, the U.S. Trustee seeks entry of an order dismissing the Debtor's case or converting the case to chapter 7.

## DISCUSSION

9. Absent unusual circumstances, the Bankruptcy Court *shall* convert or dismiss a case for cause, taking into consideration the "best interests of the creditors and the estate." 11 U.S.C. § 1112(b)(1); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012). Bankruptcy Code section 1112 does not explicitly define "cause." Subsection (b)(4) sets out a non-exclusive list of grounds that constitute cause for purposes of either converting or dismissing a chapter 11 case, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

10. Once the Bankruptcy Court finds cause, the burden shifts to the opposing party to demonstrate "unusual circumstances" establishing that dismissal or conversion would not be in the best interests of the estate and the creditors. 11 U.S.C. § 1112(b)(2); *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013).

11. The Bankruptcy Court has considerable discretion in determining whether to dismiss a case or rather to convert a case to Chapter 7. *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999).

A. **<u>Cause Exists Pursuant to Bankruptcy Code section 1112(b)(4)(A)</u>**

12. Cause, as defined in Bankruptcy Code section 1112(b), includes the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Here, the Debtor has asserted that the path forward is through a sale process. However, no such process has been initiated and upon information and belief, any sale process will be opposed by the secured lender. *See* Docket No. 11. Furthermore, the secured lender has objected to the use of its asserted cash collateral. *Id.* The Debtor has not demonstrated a viable strategy for rehabilitation nor demonstrated that continuing in bankruptcy will result in anything other than a substantial or continuing loss to or diminution of the estate.

B. **<u>Cause Exists Pursuant to Bankruptcy Code section 1112(b)(4)(B)</u>**

13. Cause, as defined in Bankruptcy Code section 1112(b), includes the "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(B). Upon information and belief, the Debtor is operating its business without a bank account and therefore lacks the corporate controls over its funds and operations that are required of a fiduciary, including safeguards regarding control and use of the corporate funds by the individual sole member, which constitutes gross mismanagement of the estate.

C. **<u>Cause Exists Pursuant to Bankruptcy Code section 1112(b)(4)(D)</u>**

14. Cause, as defined in Bankruptcy Code section 1112(b), includes the "unauthorized use of cash collateral substantially harmful to 1 or more creditors."

11 U.S.C. § 1112(b)(4)(F). The Debtor has not obtained consent of the secured creditor to use its cash collateral nor obtained approval from this Court. Any use without appropriate safeguards is to the detriment of the estate.

## CONCLUSION

**WHEREFORE,** the U.S. Trustee respectfully requests the entry of an order granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: May 14, 2025

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**For Regions 3 and 9**

By: */s/ John Schanne*
John Schanne, Trial Attorney
Office of The United States Trustee
Robert NC Nix, Sr. Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Phone: 202.934.4154
John.Schanne@usdoj.gov

Exhibit F

sadeklaw.com
New Chrome available
SADEK BANKRUPTCY
LAW OFFICES
ABOUT US
PRACTICE AREAS
LOCATIONS
BLOG
AREAS SERVED
CONTACT
SCHEDULE A CONSULTATION
(215) 545-0008
MORE BLOGS
See Our Difference. Feel Your Relief.
Over 5,000 Satisfied Clients
8 Offices in Pennsylvania and NJ
Free Initial Consultation with a Lawyer
Creditor phone calls answered 24/7
Payment Plans Available
Flat Rate Legal Fees
Super Lawyers Listed
"A Plus" Rated by the Better Business Bureau
Over 750 "5 Star" Google Reviews
Designated as an "Expert" in debt relief
Same day or next day consultations
Emergency Filings Available

Exhibit A

Gmail **J McCloud Realty <jmccloudrealty@gmail.com>**

# Your Billing Statement Is Ready

2 messages

**tellernet@pfcu.com** <tellernet@pfcu.com> Fri, May 16, 2025 at 2:31 AM
To: jmccloudrealty@gmail.com

TELLER NET LOGIN | APPLY FOR LOAN | PFCU.COM

**Dear Member,**

Your May 2025 Billing Statement (paperless statement)* is now available on Teller Net at Pfcu.com.

Simply log in, select the "eServices" menu item then "eStatement" to review and print your Billing Statement.

Here is your summary for loan ***355 L102:

- Loan Payment Due Date: 6/01/24
- Balance Before Payment: $146,420.38
- Total Payment Due: $16,805.38

Thank You!

With Online Business Banking, you get a comprehensive view of all your accounts with PFCU and you can delegate access to certain people. Once you enroll, take your business anywhere on the road.

ATM & BRANCH LOCATOR
here, there, everywhere
Search

Not here for our profit.
Here for yours.

ABA Routing & Transit Number # 236084298 | 215.934.3500 or 800.832.PFCU *(outside metropolitan area)*
Philadelphia Federal Credit Union. 12800 Townsend Road, Philadelphia, PA 19154-1003.

Your savings federally insured to at least $250,000 and backed by the full faith and credit of the United States Government. National Credit Union Administration, a U.S. Government Agency.

**tellernet@pfcu.com** <tellernet@pfcu.com> Fri, May 16, 2025 at 2:31 AM
To: jmccloudrealty@gmail.com







Exhibit A

personal bank account. Even if there is a bank account, not using it is just as bad as not having from the judge's point of view.

But I absolutely asked if there was a bank account. I have filed hundreds of bankruptcy cases and never not asked someone if they had a bank account. Especially in a corporate case. If I was aware of the bank account, I would have asked for twelve months of statements. I also sent you a requirements letter on May 6, immediately after the case was filed. A copy is attached. On page three, it requests "Bank account statements for all accounts for the past 12 months, even if they are now closed."

On Tuesday, you sent me an email stating that the company's gross receipts for 2025 to date are $14,000, and that in 2024, gross receipts were $31,200. Where is that money? How much was in the bank account before the case was filed? Why was money being deposited into Khalilah's account instead of the corporate account?

I need answers to these questions in writing before I will speak on the phone about this.

Mike Assad
Attorney at Law
Sadek Law Offices, LLC
Phone (PA): 215-545-0008
Phone (NJ): 856-890-9003

On Thu, May 15, 2025 at 6:41 AM J McCloud Realty <jmccloudrealty@gmail.com> wrote:

> Why did you tell the court we have been operating without a bank account ? We expressed we were making regular payments online and they stopped us from being able to pay. J McCloud Realty LLC still has a bank account . You didn't ask for anything pertaining to proof of having a bank account. WE don't have a bank account on that's on the list however the account we currently have is with the PFCU.
> <image0.png>
>
> Sent from my iPhone
>
>> On May 14, 2025, at 7:00 PM, Michael Assad <michael@sadeklaw.com> wrote:
>>
>> Hello Jamirah,
>>
>> I want to update you on today's court hearing on the mortgage company's motion for relief from the automatic stay. As I expected, the judge did not grant the motion today.
>>
>> However, the hearing did not go well. The judge was angry when she learned that the company was operating without a bank account before the case was filed, and she was also angry that the rents collected over the past year have not been saved. In short, she does not believe that the company has managed and spent its money in good faith before the case was filed. I am not saying that is my opinion, but the reality of it is that the way the company has been running is not a great look. There are not a lot of great answers to the questions the judge has.

process will continue and she can get answers. She also granted relief from the automatic stay to the mortgage company, which will allow the sheriff's sale to proceed in July.

The Court will soon appoint a chapter 7 trustee. That trustee will have full control of the company and its assets, which means you cannot sell the properties on your own before the sheriff sale. If you have a potential buyer, that buyer can potentially buy the property with the consent of the bank and the chapter 7 trustee. If that happens, any profits from the sale will still go to the business after liens are paid.

When these issues came up a week ago, I made it clear to you that the best course of action was to immediately seek dismissal of the case, and that spending time trying to deny reality would only hurt your position. Had you requested dismissal a week ago, I believe the outcome today could have been different.

Second, I want to address your concerns about the quality of our representation, because those concerns are entirely without merit.

From the beginning, we advised you that a Chapter 11 case was unlikely to succeed. That is why we initially recommended filing a Chapter 13 case instead. Before filing that case, we informed you in writing that there was no guarantee it would stop the sheriff's sale. After the case was filed and the lender informed us that the Chapter 13 filing would not stop the sheriff sale, we offered to refund our fees. You declined that offer and insisted that we file a Chapter 11 case. When we initially refused, you became belligerent, repeatedly calling our office and even one of our attorneys' personal cell phones until we agreed to file the case.

For you to now accuse us of mishandling your case (after you harassed us into filing it) is absurd. As I told you after the case was filed, it was my goal to get the best result possible for you. And I made every effort to do so. The real problems in this case stem from your unwillingness to accept any advice you didn't want to hear, and your failure to be upfront with us.

Before we filed the case, I asked if the company owed any debts beyond the two mortgages. You said no. Despite that, I later learned of two additional obligations, the rent assignment agreement and the SBA loan.

Because of the rent assignment agreement, we needed to file a motion to use cash collateral on the day the case was filed. But since you didn't disclose that agreement (which you signed), no such motion was filed. We only learned of the agreement after the lender filed their motion. The failure to file that motion was a major blow to your case and raised an immediate red flag with the judge. If it was not for that, the case would probably not have unraveled the way that it did.

The SBA loan should also have been disclosed at the outset, since it similarly required a cash collateral motion. But that loan wasn't mentioned until days after the filing.

Every statement I made on behalf of the company in court was based on information you provided to us. You never disclosed the existence of a bank account until after last week's hearing, even though I specifically asked, and even though I sent you a requirements letter on May 6 asking for a year of bank statements (which were never provided).

Even so, the existence of that account doesn't change anything, because it wasn't being used. Your claim that the lender blocked your access doesn't excuse the issue because you could have opened a new account elsewhere. The point is, the business wasn't depositing funds into an active corporate account. That was the problem.

Finally, regarding the invoice: the retainer agreement you signed allows us to bill for all services related to the bankruptcy case. Billing for work done in preparation for the engagement before the agreement is signed is ethical, legal, and a standard practice. All the time entries reflect work that was actually performed. With the case being converted to chapter 7, we will be required to file an application for approval of compensation with the court. A copy of that application will be provided to you, and you will have the opportunity to file an objection if you wish to do so.

Given the circumstances, we will be filing a motion to withdraw as the company's attorney within the next 24 hours. A copy of the motion will be provided to you once filed. There will be a hearing on the motion and you will have the opportunity to respond with the allegations set forth in your email. You also have the option of hiring a new attorney; if you do so, we will transfer our file.

Mike Assad
Attorney at Law
Sadek Law Offices, LLC
Phone (PA): 215-545-0008
Phone (NJ): 856-890-9003

EXHIBIT K

EXHIBIT A

| Date | Staff | Description | Hourly Rate | Hours | Fee |
|---|---|---|---|---|---|
| May 6, 2025 | MIA | Prepared email to lender to stop sheriff sale. | $475.00 | 0.10 | $47.50 |
| May 6, 2025 | MIA | Prepared chapter 11 requirements letter | $475.00 | 0.50 | $237.50 |
| May 6, 2025 | MIA | Prepared email to debtor's principal re: chapter 11 requirements and insurance | $475.00 | 0.20 | $95.00 |
| May 7, 2025 | MIA | Reviewed order requiring documents filed by clerk of court. | $475.00 | 0.10 | $47.50 |
| May 7, 2025 | MIA | Reviewed IDI email from UST | $475.00 | 0.10 | $47.50 |
| May 7, 2025 | MIA | Prepared email to UST re IDI | $475.00 | 0.10 | $47.50 |
| May 7, 2025 | MIA | Prepared email to Debtor re IDI | $475.00 | 0.10 | $47.50 |
| May 7, 2025 | MIA | Searched various public record sources including court dockets, water lien database, property tax database, etc. for lawsuits, liens, etc. | $475.00 | 1.00 | $475.00 |
| May 7, 2025 | MIA | Drafted suggestions of bankruptcy for state court cases | $475.00 | 0.50 | $237.50 |
| May 7, 2025 | MIA | Prepared email to UST and client re: noticing party address for UST on insurance. | $475.00 | 0.10 | $47.50 |
| May 7, 2025 | MIA | Reviewed proofs of insurance provided by debtor. | $475.00 | 0.10 | $47.50 |
| May 7, 2025 | MIA | Research re: subchapter v plan of liquidation | $475.00 | 1.30 | $617.50 |
| May 8, 2025 | MIA | Email to UST re: insurance | $475.00 | 0.10 | $47.50 |
| May 8, 2025 | MIA | Reviewed mortgage foreclosure documents. | $475.00 | 1.00 | $475.00 |
| May 8, 2025 | MIA | Phone call with Khalilah to discuss rental income. | $475.00 | 0.20 | $95.00 |
| May 8, 2025 | MIA | Reviewed motion for relief from stay filed by mortgage company. | $475.00 | 0.50 | $237.50 |
| May 8, 2025 | MIA | Phone call with debtor to discuss MFR. | $475.00 | 0.30 | $142.50 |
| May 9, 2025 | MIA | Prepared email to UST re: scheduling of 341 meeting. | $475.00 | 0.10 | $47.50 |
| May 8, 2025 | MIA | Prepared chapter 11 plan | $475.00 | 3.00 | $1,425.00 |
| May 9, 2025 | MIA | Prepared application to employ attorney | $475.00 | 1.00 | $475.00 |
| May 9, 2025 | MIA | Phone conversation with UST and SubV trustee | $475.00 | 0.30 | $142.50 |
| May 12, 2025 | MIA | Email to debtor's principal re: motion for relief and plan. | $475.00 | 0.30 | $142.50 |
| May 12, 2025 | MIA | Prepared email to UST re: proof of insurance. | $475.00 | 0.20 | $95.00 |
| May 12, 2025 | MIA | Prepared email to debtor re: info needed for schedules. | $475.00 | 0.30 | $142.50 |
| May 12, 2025 | MIA | Phone call with debtor re: information for schedules | $475.00 | 0.30 | $142.50 |
| May 12, 2025 | MIA | Phone call with debtor's principal re: motion for relief | $475.00 | 0.60 | $285.00 |
| May 12, 2025 | MIA | Prepared amended matrix | $475.00 | 0.20 | $95.00 |
| May 12, 2025 | MIA | Prepared email to debtor's principal re: mortgage payments and DIP accounts. | $475.00 | 0.30 | $142.50 |
| May 13, 2025 | MIA | Prepared email to debtor's principal re: defense of motion | $475.00 | 0.30 | $142.50 |
| May 14, 2025 | MIA | Represented debtor at hearing on motion for relief. | $475.00 | 0.50 | $237.50 |

EXHIBIT K

| Date | Staff | Description | Hourly Rate | Hours | Fee |
|---|---|---|---|---|---|
| May 14, 2025 | MIA | In-person discussion with UST re: potential motion to dismiss | $475.00 | 0.10 | $47.50 |
| May 14, 2025 | MIA | Reviewed motion to dismiss filed by UST | $475.00 | 0.20 | $95.00 |
| May 14, 2025 | MIA | Reviewed emails from UST, lender, and SubV trustee | $475.00 | 0.10 | $47.50 |
| May 14, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | $475.00 | 0.50 | $237.50 |
| May 15, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | $475.00 | 0.30 | $142.50 |
| May 15, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | $475.00 | 0.30 | $142.50 |
| May 15, 2025 | BJS | Phone call with debtor's principal re: motion to dismiss | $475.00 | 0.20 | $95.00 |
| May 15, 2025 | MIA | Prepared email to debtor's principal re: motion to dismiss. | $475.00 | 0.20 | $95.00 |
| May 15, 2025 | BJS | Phone call with MA to discuss case strategy | $475.00 | 0.50 | $237.50 |
| May 15, 2025 | MIA | Phone call with BJS to discuss case strategy | $475.00 | 0.50 | $237.50 |
| May 16, 2025 | MIA | Reviewed email from Debtor re: motion to dismiss | $475.00 | 0.10 | $47.50 |
| May 19, 2025 | MIA | Reviewed email from Debtor re: motion to dismiss | $475.00 | 0.10 | $47.50 |
| May 20, 2025 | MIA | Prepared email to Debtor re: motion to dismiss | $475.00 | 0.10 | $47.50 |
| May 21, 2025 | MIA | Reviewed email from Debtor re: motion to dismiss | $475.00 | 0.10 | $47.50 |
| May 21, 2025 | MIA | Prepared email to UST re: motion to dismiss | $475.00 | 0.10 | $47.50 |
| May 21, 2025 | MIA | Represented Debtor at hearing on motion to dismiss/convert case | $475.00 | 0.30 | $142.50 |
| May 21, 2025 | MIA | Prepared email to Debtor re: conversion of case to chapter 7 | $475.00 | 1.00 | $475.00 |

Timekeepers: (BJS) Brad J. Sadek, Attorney; (MIA) Michael I. Assad, Attorney

**Total Fees** **$8,740.00**

Total Hours 15.60

| | | | | | |
|---|---|---|---|---|---|
| | | Postage | | | $15.00 |

**Total Expenses** **$15.00**

**Grand Total** **$8,755.00**

**Reduction** **$1,960.50**

**Total Award Request** **$6,794.50**