| | **Sadek Law Offices, LLC** |
|---|---|
| M<small>IKE</small> A<small>SSAD</small><br>215-545-0008<br>michael@sadeklaw.com | 1500 JFK Boulevard, Suite 220<br>Philadelphia, PA 19102 |

June 23, 2025

**VIA CM/ECF**
Hon. Ashely M. Chan
United States Bankruptcy Court
900 Market Street
Philadelphia, PA 19107

Re: *In re J McCloud Realty LLC*, Chapter 7 Case No. 25-11778-amc
**Response to Pleadings Filed at ECF No. 66-67**

Dear Chief Judge Chan:

    I submit this response to the above-referenced pleadings on my own behalf, and on behalf of Brad J. Sadek and Sadek Law Offices LLC. We represented Debtor J McCloud Realty LLC in the above-referenced case until the Court, at our request, entered an order withdrawing our appearance on June 12, 2025.

    The next day, Jamirah McCloud, the Debtor's principal, filed two pleadings on behalf of the Debtor. The first is docketed at ECF No. 66 as a motion to reconsider relief from the automatic stay, and the second is docketed at ECF No. 67 as a motion to reconsider conversion, objection to attorney compensation, request for conversion to chapter 7 or dismissal, and for sanctions due to attorney misconduct.

    Although the docket captions provide a clear delineation of the relief requested, the pleadings themselves are incoherent and make overlapping requests for relief. Both pleadings make unsubstantiated allegations of misconduct against Sadek Law Offices and request that the Court relief against us. Between them, the pleadings request that the Court (1) deny our pending application for compensation filed at ECF No. 57; (2) order us to refund the pre-petition fees disclosed in the employment application filed at ECF No. 16; (3) refer us "to appropriate disciplinary authorities for review of misconduct," including "disbarment review;" (4) authorize the Debtor to "recover costs associated with securing new legal representation," presumably from us, and (5) impose sanctions against us.

    The Court must deny these maniacal requests for relief in their entirety. The allegations about our representation are inconsistent with the record, our reputation, and our demonstrated ability to successfully represent similar debtors.

    Two days before this case was filed, we filed a similar, but unrelated case before this Court, *In re Erie Kash Out Properties LLC*, Chapter 11 Case No. 25-11729-amc, in which we represent the

Hon. Ashely M. Chan
June 23, 2025
Page 2

debtor. Similar to the debtor here, *Erie* is a closely-held corporation, owns a rental property, and filed for bankruptcy to repay arrears on its mortgage and a loan owed to the U.S. Small Business Administration. On behalf of the *Erie* debtor, we prepared and filed all statements and schedules required by the Bankruptcy Code, negotiated a cash collateral agreement, successfully defended against a motion to dismiss or convert filed by the U.S. Trustee, and represented the debtor at the meeting of creditors. The *Erie* debtor is on the path to confirmation. If confirmed, it will be the third chapter 11 case in which a Debtor represented by me has achieved plan confirmation.

This case did not unravel because of us, it unraveled because of the Debtor's failure to cooperate and provide timely, accurate disclosures.

When this case was filed, we questioned the Debtor about its assets, liabilities, and other relevant matters necessary to determine appropriate post-filing steps. We also provided the Debtor's principal with a comprehensive written explanation of the Debtor's obligations under chapter 11 of the Bankruptcy Code. A copy is attached as Exhibit A. The written documentation included a list of documents and information the Debtor was required to submit to us.

Despite appropriate questioning, at the time the case was filed the Debtor did not disclose any debts other than the mortgages on its properties. Several days after the case was filed, we were informed that the Debtor owed a debt to the U.S. Small Business Administration and had entered into a rent assignment agreement with its mortgage lender. If we had been aware of these important facts when the case was filed, we would have filed a motion to approve use of cash collateral. But because we were not made aware of those agreements, no such motion was filed.

The week after the case was filed, the Court held a hearing on a motion to prohibit cash collateral filed by a creditor. At that hearing, I represented to the Court that the Debtor did not maintain a corporate bank account at the time the case was filed. I made that representation based what the Debtor's principal had told me. The Court ended the hearing by inviting any creditor or the U.S. Trustee to file a motion to dismiss the case.

After the U.S. Trustee filed a motion to dismiss or convert the case to chapter 7, I encouraged the Debtor to consent to voluntary dismissal of the case, which it refused to do for nearly a week. It finally consented to dismissal in an email sent to me on Tuesday, May 20, about twenty-four hours before the hearing. Because my daughter was born unexpectedly on Monday, May 19, I had limited opportunities to check my email and did not become aware of the message until shortly before the hearing on Wednesday, May 21. I was unable to prepare and file a motion to dismiss the case on such short notice, but I properly represented the Debtor's interests by requesting that the case be dismissed and defending against conversion orally at the hearing.

Hon. Ashely M. Chan
June 23, 2025
Page 3

> THE COURT: Debtor, do you oppose—Debtor's counsel, do you oppose the conversion of the case to chapter 7?
>
> MR. ASSAD: The Debtor does oppose conversion. There's no defense to—no defense to dismissal. And in fact, the Debtor—I have authorization to consent to dismissal. The Debtor believes that dismissal is the best course of action because it puts everything right where it was before the case was filed and still entitles all of the creditors to their state court actions.

(Conversion Hearing at 00:45:41.)

The day after the case was converted, the Debtor instructed us to file a motion to dismiss the case. We did not do so because, as we explained to the Debtor, the Court would not grant a motion to dismiss days after converting the case to chapter 7. The Debtor then instructed us to file an appeal to the motion granting relief from the automatic stay. We did not do so because, in our professional judgment, an appeal of the relief order could not be supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Instead, we filed a motion to extend the deadline to file an appeal.

The Debtor's pleadings grossly misrepresent the discussions that occurred between us. When the Debtor began to make allegations inconsistent with their previous representations to us, we refused to speak with its principal on the phone and insisted that all discussions be conducted by email. Those emails, which speak for themselves, are attached as Exhibit B.

We initially declined to file this case. We only agreed to do so after the Debtor's principal became belligerent and, over a two-hour period, repeatedly called our office and the personal mobile phone of one of our attorneys until we agreed to file this case. Had we known then what we know now, we would not have done so.

We request that the Court grant our fee application in the form of order attached. We take no position on the Debtor's requests for reconsideration of the orders granting relief from the automatic stay and converting this case to chapter 7.

Sincerely,

**SADEK LAW OFFICES, LLC**

By: */s/ Michael I. Assad*