UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PENNSYLVANIA

```
                                    :
IN RE:                              : Case No.  25-11778AMC
                                    :
J McCloud Realty LLC,      CH: 7    :
                                    : Philadelphia, Pennsylvania
                                    : June 25, 2025
                                    : 1:15 p.m.
                                    :
. . . . . . . . . . . . . . . . . . :
```

BEFORE THE HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

| | |
|---|---|
| For the Debtor: | Michael I. Assad<br>Sadek Law Offices, LLC<br>1500 JFK Boulevard , Suite 220<br>Philadelphia, PA 19102<br>215-545-0008 |
| For the Movant: | William J. Levant<br>Kaplin Stewart<br>910 Harvest Drive<br>Post Office Box 3037<br>Blue Bell, PA 19422<br>610-941-2474 |
| For United States<br>Trustee: | Rachel Wolf<br>DOJ-Ust<br>Office of The United States Trustee<br>Robert N.C. Nix Federal Building<br>900 Market Street, Suite 320<br>Philadelphia, PA 19107<br>202-934-4154 |
| Also Appearing: | Jamirah McCloud-Ford<br>Khalilah Boyd<br>James McGarrity |

Proceedings recorded by electronic sound recording;
transcript produced by TheRecordXchange.

```
 1   JUNE 25, 2025                                    1:15 P.M.

 2            THE COURT:  Number 65, J. McCloud Realty LLC.  It's a

 3   per se letter for reconsideration of the order granting relief.

 4   Appearances, please.

 5            MR. LEVANT:  Good afternoon, Your Honor.

 6   William J. Levant for Philadelphia Federal Credit Union.

 7            THE COURT:  Okay.

 8            MR. MCGARRITY:  Yeah.  This is James McGarrity.  I'm

 9   also on the phone.  I haven't formally entered, but Ms. McCloud

10   had asked me to be on the phone.  I guess there was some

11   objection of her speaking for an LLC, and she wanted, I think,

12   me on the phone too.

13            THE COURT:  Okay.

14            MR. MCGARRITY:  I'm not familiar enough to argue

15   much, but --

16            MR. LEVANT:  Your Honor, for today's purposes, I will

17   not assert that the LLC needs to be represented.

18            THE COURT:  Okay.  Who was that just talking on the

19   line?

20            THE CLERK:  That's Mr. Levant.

21            THE COURT:  Oh, okay.  All right.  Thanks,

22   Mr. Levant.  Okay.

23            MS. MCCLOUD-FORD:  Jamirah McCloud-Ford speaking.

24            THE COURT:  Okay.  Can you just repeat your name,

25   ma'am?
```

1          MS. MCCLOUD-FORD:   Jamirah McCloud-Ford.

2          THE COURT:  Okay.  And who are you, ma'am?  You're

3  with McCloud, the Debtor?

4          MS. MCCLOUD-FORD:  The Debtor.

5          THE COURT:  -- the Debtor.   Yeah.  Okay.

6      (Court and Clerk confer)

7          MR. ASSAD:  Mike Assad on behalf of Sadek Law

8  Offices.

9          THE COURT:  All right.  Mr. Assad.

10          So my recollection is that --

11          MS. WOLF:  And --

12          THE COURT:  Yes.  Okay.  Go ahead.

13          MS. WOLF:  Good afternoon, Your Honor.  Rachel Wolf

14  representing the U.S. Trustee.

15          THE COURT:  Okay. Great.  Thank you.

16          MS. BOYD: And I'm Khalilaha Boyd on behalf of the

17  Debtor.

18          THE COURT:  Okay.  All right.  So my recollection is

19  that when we were here last there was a motion for relief that

20  had been filed against this Debtor, as well as a motion --

21  maybe it was like to dismiss or convert, and Mr. Assad, you

22  were representing the Debtor at that time.  And I believe that

23  this is the case where I had been asking about, I guess, the

24  use of cash collateral because it appeared that the Debtor

25  might have been using cash collateral.  And I think when I

1   asked you, Mr. Assad, about that, you said that you thought

2   that the Debtor didn't have a bank account.  Is that this case,

3   Mr. Assad?

4           MR. ASSAD:  That's right, Your Honor.

5           THE COURT:  Yeah.  And so after that, I was greatly

6   dismayed about the Debtor, or you saying that the Debtor didn't

7   have bank accounts, which is something that I haven't ever

8   encountered in my entire legal career.  And so as a result of

9   my concerns, I did grant the motion for relief from they stay,

10  and I did enter an order converting this case to a Chapter 7.

11          And then subsequently, you, Mr. Assad, you didn't

12  file an appeal, but you filed a motion to extend the time to

13  file -- was this the one where he did that?  He did file the

14  motion to extend --

15          MS. MCCLOUD-FORD:  Yes.

16          THE COURT:  -- the time.  And the problem is --

17          MR. ASSAD:  Yes, Your Honor.

18          THE COURT:  -- that on a motion for relief, when an

19  order is entered, the appeal period under the rules explicitly

20  may not be extended; were you aware of that rule?

21          MR. ASSAD:  Yes, Your Honor.

22          THE COURT:  You were aware of it at the time, or

23  you're aware of it now?

24          MR. ASSAD:  I'm aware of it now.

25          THE COURT:  Yes.

1          MR. ASSAD:  I --

2          THE COURT:  Yes.  So the Debtor has lost the ability

3    to appeal the order entered granting the motion for relief from

4    the automatic stay, because it wasn't appealed in a timely

5    manner and you're not permitted to file extensions for that.

6          We also have your, I think, motion for the -- I guess

7    you, were -- did you extend the time then to file the appeal?

8    I'm getting confused with that other case.  Remember that other

9    case that we had that's just like this, but -- so but the

10   conversion also, you appealed that, as well.  Has that been

11   appealed then or --

12         MR. ASSAD:  It was a motion to extend the time to

13   file an appeal.

14         THE COURT:  And then did the Debtor --

15         MR. ASSAD:  Which Court the granted --

16         THE COURT:  -- actually, yeah --

17         MR. ASSAD:  -- granted it until --

18         THE COURT:  Yeah.  And I gave to them like Friday, or

19   something of last week.  So did -- was an appeal ever filed?

20         MS. MCCLOUD-FORD:  Yes.

21         MR. ASSAD:  There was a motion to reconsider it

22   filed, which is before the Court now.

23         THE COURT:  Yeah.  Okay.  So --

24         MS. MCCLOUD-FORD:  We asked the Court to --

25         MR. MCGARRITY:  We don't believe there was actually

1   an appeal.

2          THE COURT:  Okay.  Well --

3          MS. MCCLOUD-FORD:  The appeal is scheduled for next

4   month.

5          THE COURT:  Okay.  And so before me is this motion to

6   reconsider the order granting relief from the stay and the

7   conversion motion.  And I'll just outline for you, Debtor and

8   Mr. McGarrity, that the legal standards for granting a motion

9   for reconsideration is that there has to be a change in the

10  controlling law, or new facts that were not available at the

11  time that the motion was considered or manifest injustice.

12         And I must admit that when I read this motion, unless

13  you have anything to add, Mr. McGarrity, I don't see anything

14  here that would give me a basis to grant a motion for

15  reconsideration.  I don't see any change in controlling law or

16  new facts that weren't available at that time or manifest

17  injustice.

18         I understand that there's some disagreement between

19  the Debtor and her prior attorney, but I just don't see

20  manifest injustice other than the fact that she chose this

21  attorney, and she's unhappy with the services that he

22  performed.  So did you have anything that would give me some

23  grounds to grant a motion for reconsideration, Mr. McGarrity?

24         MR. MCGARRITY:  My understanding, and it's from

25  Jamirah McCloud, basically was that we had gotten that

1    continuance of the sheriff's sale back in February with an

2    agreement of sale.  I know that didn't go through, but my

3    understanding since then, is that the person turned it into,

4    instead of a purchase, he was getting a loan and making

5    $100,000 available to her, which I think is going to fix.

6            She had the cash supposedly that's, I think it's just

7    waiting for the final appraisal, but I think it's been

8    approved.  That's what I understood how she was going to get

9    out of it.

10           THE COURT:  Okay.  So a lender --

11           MR. MCGARRITY:  So I don't know if that --

12           THE COURT:  Has the lender been given this

13   information?

14           MR. LEVANT:  Your Honor, we have not heard anything

15   of the sort.

16           THE COURT:  Okay.  All right.  Well, it sounds

17   like --

18           MS. BOYD:  Mike Assad was -- Mike Assad was -- was

19   aware of this.

20           THE COURT:  Okay.  And I understand --

21           MS. BOYD:  And he never filed anything.

22           THE COURT:  And I do understand your unhappiness

23   about that, ma'am.  So for purposes of today, though, as I

24   said, there's a certain legal standard, and while you may be

25   unhappy with your prior attorney, I don't have a legal basis to

1  grant your motion for reconsideration of either of these

2  matters, unfortunately for you.  So I am going to deny those

3  motions.

4         MS. BOYD:  Before you be final with your motion, I

5  was told that today was only for the motion of vacating the

6  order, and I was also told that one of the reasons, the legal

7  reasons in the Eastern District of Bankruptcy Court was that if

8  it was misconduct on behalf of your attorney, and we have shown

9  that it was misconduct.  He's -- he's our attorney, and he's

10  just learning that he couldn't file an extension to an appeal

11  that was needed for us to be able to move forward.

12         THE COURT:  And I understand that.  With regard to

13  the --

14         MS. BOYD:  It's not -- that's not -- that's not being

15  unhappy, that's the law that says, we've shown all of that.

16         MR. ASSAD:  Your Honor, may I --

17         THE COURT:  Yeah.

18         MR. ASSAD:  -- say something?  Just for the Court's

19  benefit.  The, as I explained in both the motion to withdraw as

20  attorney and as I explained in the response to the motions that

21  were filed, the primary reason that the appeal of the order on

22  the motion for relief was not filed, was because as an officer

23  of the Court, I do not believe that I could have filed such a

24  motion that would comply with Rule 11, because there was no

25  legal basis for me to do so.

1          THE COURT:  Okay.  I understand.

2          MR. ASSAD:  So as a compromise, I filed the motion to

3   extend, which I understand the Court did not have grounds to

4   enter, and that was my error.  But had I known that, the

5   alternative would have been simply not to file that either,

6   because I couldn't file an appeal and comply with my

7   obligations to the Court.

8          THE COURT:  Okay.  So I guess I -- what I want to do

9   is I just want to refresh the Debtor about the underlying

10  reasons that I entered the order granting the motion for relief

11  in the first place.

12          So lender, it was my recollection that you hadn't

13  received any post-petition payments after the case was filed;

14  is that correct?

15          MR. LEVANT:  That is correct.

16          THE COURT:  Okay.  And did you believe that there was

17  any equity in the property?

18          MR. LEVANT:  We believe that there is none in one of

19  them.  We believe there may be a small amount in the other.

20          THE COURT:  Yeah.

21          MR. LEVANT:  However, the taxes continue to accrue.

22  They haven't been paid for several years.  And what we saw, and

23  I realize at this point I'm crossing over into cause, that

24  there's just not enough money to make this work.  Even if --

25  the properties are single-family residences.  I believe the

1    Debtor said they each had two families in them.

2           That is another issue for another day.  But even if

3    everybody pays their rent, the margins are so narrow that I

4    can't imagine that they'd ever be able to confirm a plan that

5    they could comply with.

6           THE COURT:  Okay.  So --

7           MR. LEVANT:  And --

8           THE COURT:  Okay.  Thank you for that clarification.

9           MR. LEVANT:  I'm sorry, go ahead.

10          THE COURT:  I wanted to just address the Debtor

11    again.

12          So ma'am, I just wanted to go over the reasons why

13    the order was entered granting the motion for relief in the

14    first place.  And that's that when this bankruptcy was filed,

15    there are two types of obligations that the Debtor owed.  The

16    Debtor owed pre-petition obligations to the lender, but it also

17    owed post-petition obligations.  And when you file the

18    bankruptcy, the bankruptcy stops the collection of whatever the

19    Debtor owed pre-petition, and then hopefully you can file a

20    plan that talks about how you can repay that.

21          However, there is one obligation that has to be made

22    immediately, even after you file for bankruptcy, and that's

23    that you have to make post-petition payments to the lender to

24    adequately protect their interests.  And here, when the case

25    was filed, no payments were made to this lender.  So when no

1    payments are made to the lender, and there's not like a huge

2    amount of equity in the property, then I'm forced to grant the

3    motion for relief from the stay.

4            So the reason why I granted the motion for relief in

5    the first place, other than the fact that I thought that there

6    might not be bank accounts, which seemed really strange to me,

7    was that this lender hadn't received any payments.  That's an

8    obligation that you have to make as soon as you file for

9    bankruptcy.  And in the absence of those payments, I'm forced

10   under Section 362D to grant relief from the stay.

11           And so for those very same reasons, I cannot grant

12   the motion for reconsideration because this lender didn't get

13   any payments.  And while I hear Mr. Garrity saying that you

14   might have money available and you might be able to pay off the

15   lender, that's -- I don't have any cold, hard cash here in

16   front of me that I can see that would satisfy that

17   post-petition obligation.

18           MS. BOYD:  Right.

19           THE COURT:  And in the absence of that, I'll have to

20   deny your motion for reconsideration.  But that doesn't mean

21   that if you come up with money, Mr. McGarrity could reach out

22   to the lender and try to work something out with them.  Do you

23   understand?

24           MS. BOYD:  Judge Chan, the -- the money isn't due

25   yet.  See our -- we didn't even go a whole month yet.  It

 1   hasn't even been a whole month, the money isn't due yet, since

 2   we filed bankruptcy.  We had to take --

 3          MR. LEVANT:  Your Honor, if I may --

 4          MS. BOYD:  -- is mix up.

 5          MR. LEVANT:  -- they also never asked for cash

 6   collateral permission.  And the rents are my client's cash

 7   collateral, and two weeks today, they haven't asked.

 8          THE COURT:  So ma'am, the problem is that when you

 9   filed for bankruptcy, you weren't just allowed to use the rents

10   for your own purpose, you had to turn those rents over to the

11   lender or at least at the very least file a motion to get my

12   permission to do it.  And you filed in May --

13          MS. MCCLOUD-FORD: Right.

14          THE COURT:  -- and it's June 25th, and they haven't

15   received any payments for this.  So you could reach out to the

16   lender and try to work that out.  But if they don't agree,

17   then --

18          MS. BOYD:  Our lawyer did not file the motion.

19   That's why we hired a lawyer.  He was supposed to file.  We

20   don't know what we're supposed to file.  He knew that that was

21   the rent.  The lender also knew that we were holding the rents,

22   because prior to us asking -- hiring a bankruptcy lawyer, I

23   asked them could we bring all the arrears.

24          Because we were victims of fraud, of people taking

25   money out of our bank account, I kept the money in a safe

1  because we didn't want money being taken out again.  I had

2  emails with --

3         THE COURT:  Okay.  So let me -- hold on one second.

4  Hold on, ma'am, just one second.

5         So Mr. Assad, did you ask your client whether or not

6  they had rents or cash on hand?  Did you ask the Debtor these

7  questions, before you filed the case for them?

8         MR. ASSAD:  I did, Your Honor.  And I also

9  extensively questioned the Debtor about its obligations under

10  the agreement.  They did not disclose that there was a separate

11  rent assignment agreement that had been executed with the

12  lender.  And in fact, there's in my response to the motions, I

13  attached the correspondence I've had with the Debtor who says

14  they didn't recall signing it.  So, which corresponds with --

15         MS. BOYD:  Mr. Assad, you -- I'm sorry, I'm sorry.

16  But Mr. Assad, in your invoice that you submitted to us that we

17  exhausted all of our funds before we even got to the creditors,

18  we didn't even meet the creditors, the meeting with the

19  creditors.  We didn't get there yet because you said we

20  exhausted $12,000 within your first meeting.

21         And you said you weren't going to do anything else

22  because we exhausted all of our funds.  And in that invoice

23  that you submitted to us, you have one there, that you reviewed

24  the mortgage for an hour, an hour, 475.  You're billing us at

25  475 an hour.  You reviewed the mortgage for an hour, which lets

1    you know that you should have saw assignments of the rent.

2            Then on top of that, Mr. Levant also provided you

3    with that when he filed whatever he filed.  So that was on you.

4    You're the attorney.  You knew that we had that money.  You

5    should have filed it.  You knew that you were supposed to file

6    it.  We didn't know that you were supposed to file that.

7            Everybody knew that we had that money.  And that's

8    why when you I have the emails that say, well, you told us we

9    don't have any money.  No, we don't.  We only have the rent.

10   You said, okay, we can use it.  I asked you, could you take a

11   post-dated check, because the money is in a safe.  You said,

12   no.  You can get people to call in, and that's what we did.  We

13   got people to call in and I put them -- and I paid them back

14   out of the money.

15           That was it.  We had 24 hours to do that.  And on top

16   of that, you made us file a Chapter 13 without going to the

17   bank or the attorney.  Mr. Assad messed this whole case up

18   before we could even get -- we're in defense right now.  We

19   didn't mess up, he messed up.

20           MR. ASSAD:  Your Honor, may I address the Court?

21           THE COURT:  Okay.

22           MR. ASSAD:  So to respond to the relevant points, the

23   mortgage, so I became aware of the rent assignment agreement

24   two days after the case was filed, when the lender filed a

25   motion to prohibit use of cash collateral.  My review detail of

1   the mortgage was on that same date.  So that's the same date

2   that I became aware of it.  And the bottom line is, I was not

3   notified of that agreement, which was a separate agreement from

4   the mortgage.  And I couldn't have known about it when the case

5   was filed because they didn't tell me about it.

6   Nevertheless --

7            MR. LEVANT:  I need to point out that it was recorded

8   ages ago.

9            MR. ASSAD:  And this case was filed in an emergency.

10           THE COURT:  Okay.  I guess I have one question.  So

11  lender, as we're sitting here today, how much is the lender

12  due, post-petition?

13           MR. LEVANT:  There are two separate obligations.

14  Well, I would assume it's either one or two.  Let me check the

15  due date for each of the loans.

16           THE COURT:  Yeah.

17           MR. LEVANT:  But as I said, two separate obligations.

18           THE COURT:  Right. So --

19           MR. LEVANT:  And the other thing is the Debtor had

20  said, I believe, last time we were here, either Debtor or the

21  Debtor's attorney, said that they had an account with my

22  client.  And the account was overdrawn, it was closed in 2022.

23  And I am told they have no other account, nothing open.  So --

24           MS. BOYD:  Just so you know, Mr. Levant, we still

25  have that account open.  You are referring to a personal

1   account.  The business account is still open.  We still get the

2   online, what do you call it every month that you get?  We get

3   online stuff.  I can't remember.  What is it call?

4            MR. LEVANT:  The statement.

5            MS. BOYD:  We get the online statement.  We do not

6   have access to upload anything.  But I can give you a

7   screenshot to let you know we still have the account.  We still

8   have an account.  We asked Mr. Assad to close the account

9   because for the assignment that he gave us for the DIP bank

10  account, you have to close the account.  We were trying to

11  close the account.  They wouldn't allow us, but they said the

12  attorney can do it.  He refused to talk to us.  He refused to

13  do that on our behalf.  And we still have the business bank

14  account.

15           So both of you are saying things that aren't true.

16  The business bank account is still open.  The one that's

17  overdrawn is the one with her personal name, which is the one

18  that people were stealing money out of.  That was the whole

19  thing.  That's how we got in this mess in the first place.

20           We have been with PFCU for several years.  We have --

21  we have refinanced our properties three different times.  Three

22  different times.  If we were poor lenders, they would not have

23  done it.  The equity in the properties are still good.  They

24  actually went up.

25           We didn't get a chance to do any of that.  I offered

1  to ask Mr. Assad that we can go to get the CMA.  He said we

2  wouldn't even need it.  We don't need it.  They'll do an

3  appraisal.  We didn't get to do any of this stuff because he

4  destroyed our company in the first month.  He didn't even get

5  to the rent, he didn't even get to the date where we can, you

6  know, meet the creditors to show you our schedule.

7           My daughter did her schedule in the first, second

8  day.  Mr. Levant said that we didn't have insurance.  I called

9  him right back and sent the insurance the same day.  We've

10 never missed a payment.  We are not negligent.  Not at all.

11 Somebody got a hold of my daughter's bank account, and we are

12 battling fraud.  We had to protect the money that he --

13          THE COURT:  All right.  All right.  So ma'am, I hear

14 what you're saying.  So Mr. Levant, it sounds like what I'm

15 hearing is that the Debtor said that one of the reasons that

16 they're in bankruptcy is because this personal account was the

17 subject of some kind of fraud or scam.  Had you heard that

18 before, or do you know anything about that?

19          MR. LEVANT:  I only heard it from Ms. McCloud-Ford.

20 I have not heard it from my client.  And since these cases

21 involve with the LLC, it was not of primary concern to me.

22          THE COURT:  Yeah.

23          MR. LEVANT:  While --

24          THE COURT:  Okay.

25          MR. LEVANT:  -- she was talking I found the monthly

1   payment amounts for you.

2          THE COURT:  Yeah.  Okay.  What's the monthly payment

3   amount?

4          MR. LEVANT:  On one of the loans, it is 974.48, and

5   it hasn't been paid since December --

6          THE COURT:  So are you saying it's -- are you talking

7   about --

8          MR. LEVANT:  -- of '23.

9          THE COURT:  Are you saying $974, that's the amount?

10          MR. LEVANT:  Yes.

11          THE COURT:  Oh, okay.

12          MR. LEVANT:  974.48.

13          THE COURT:  Okay.  And the other one?

14          MR. LEVANT:  Hasn't been paid since December of '23,

15   and let me see what date of the month; just give me one more

16   second.

17          MS. BOYD:  Mr. Assad, were our attorney --

18          THE COURT:  So hold on.  So Debtor, Debtor, just hold

19   on second.

20          MS. BOYD:  Yes.  I'm sorry.

21          THE COURT:  Yeah.  Yeah.  Just --

22          MS. BOYD:  Because I just showed him a receipt.  I

23   just showed him a bank receipt that the last payment we made

24   was 724.  Yeah --

25          MR. LEVANT:  December 18th of 2023, is the last time

1  the one account was paid.  Now let me look at the other one.

2           THE COURT:  Yeah.  I guess I'm just interested in

3  what's currently due.

4           MR. LEVANT:  Well, it's due on, I believe, the 18th

5  of the month.  And what was the date she filed?

6           THE COURT:  May 6.

7           MR. LEVANT:  I don't have it right in front of me.

8           THE COURT:  May 6 it was filed.

9           MR. LEVANT:  So she owes me two post-petition

10 payments.

11          THE COURT:  So what's the total amount that's owed;

12 if you could just add that together.

13          MR. LEVANT:  I'm looking for the other one --

14          THE COURT:  Yeah.  Right.

15          MR. LEVANT:  -- give me a moment.  The computer is

16 not cooperating.

17          THE COURT:  Okay.  While you're --

18          MS. BOYD:  Well, while he's going --

19          THE COURT:  So while he's looking for that --

20          MS. BOYD:  Can I say something?

21          THE COURT:  No.  I'd like to say something first.

22          MS. BOYD:  Okay.  Yes, I'm sorry.

23          THE COURT:  It's okay.  That's all right.  So I guess

24 I just want to share with you all of my thoughts.  The case,

25 obviously, is very messy at this point.  And I guess I'm

1 hearing the following things from all of the parties.  I'm

2 hearing from the Debtor that she went into this bankruptcy

3 hoping that she could save these two pieces of real property.

4 And she's unhappy with the services that you provided to her,

5 Mr. Assad.

6   Mr. Assad, you're saying that you asked her all of

7 the pertinent questions that you didn't have, all of the

8 information.  So I basically have a point of disagreement

9 between the two of you.  And it's a little hard for me sitting

10 here today to parse out who's more credible or what's exactly

11 to get to the bottom of it.  But I hear that the Debtor is

12 unhappy with your services and that you think that you provided

13 everything there.

14   I guess the one piece of information that I was

15 dismayed about, Mr. Assad, was that when you came into the

16 courtroom and I asked you about bank accounts and you told me

17 that the Debtor didn't have any bank accounts, I think that if

18 you had practiced Chapter 11 law routinely, you would have

19 known that asking the Debtor about bank accounts was like one

20 of the number one things that you have to do.  You would be

21 asking for bank accounts and statements.

22   And if the Debtor did say that they didn't have any

23 bank accounts, that would be a serious red flag about that.  So

24 I guess without knowing exactly what transpired between the two

25 of you, I'm dismayed that you came to my motion to use cash

1   collateral and you took the position that the Debtor didn't

2   have bank accounts.  That's highly unusual.  And I think if you

3   had practiced this type of law more routinely, you would have

4   realized that that was wrong.

5          So I am concerned.  While I don't know all of the

6   allegations made by this Debtor is true, I do feel like there

7   were things going on here that weren't right.  So for that

8   reason, I'm inclined to give the Debtor a continuance to see if

9   there's some way that she could maybe try to make some of these

10  things right, just on the motion for relief at least, because

11  that's not subject to the appeal.

12         And I guess, lender, my thought is that she's been in

13  bankruptcy for about a month and a half, and it sounds like at

14  least one of the payments is only $900.  So I'd like to get --

15         MR. LEVANT:  The other one I now has.

16         THE COURT:  Yeah.

17         MR. LEVANT:  It's 485.38.

18         THE COURT:  Yeah.

19         MR. LEVANT:  So the total monthly amount is about

20  $1450.

21         THE COURT:  Yeah.  So Debtor, I guess what I'm

22  suggesting that maybe we do is, do you understand that you have

23  to make monthly payments to the lender post-petition?

24         MS. BOYD:  Yes.

25         THE COURT:  Okay.

1          MR. LEVANT:  Yes.

2          MS. BOYD:  Yes.

3          THE COURT:  So that means that, as we're sitting here

4    today, if I adjourn the hearing for a couple of weeks, it would

5    mean that you owe two payments, and each payment is about

6    $1400.  So it means that if we meet again in two weeks, you'll

7    owe them $3,000 post-petition.  And I guess the question for

8    you that I have is, do you think you could come up with $3,000

9    to pay this lender?

10          MS. MCCLOUD-FORD:  Yes.

11          MS. BOYD:  Yes.

12          THE COURT:  Okay.

13          MS. BOYD:  The part that we're having a problem with,

14   we don't have a way to pay the lender. They -- they blocked us

15   online.  They've --

16          THE COURT:  Okay.  All right.  Okay.

17          MS. BOYD:  He has a --

18          THE COURT:  So may I make a suggestion?

19          MS. BOYD:  Yes.

20          THE COURT:  Mr. McGarrity is a fine lawyer.  I'm

21   happy if you want to retain him as a lawyer and maybe you

22   could.

23          Mr. McGarrity, you could file your notice of

24   appearance in the case in the coming days.  Would that be

25   something you're interested in doing?

1          MR. MCGARRITY:  I don't think I'm competent enough on

2   a Chapter 11 --

3          THE COURT:  Yeah, okay.  All right, so --

4          MR. MCGARRITY:  -- and if to do that --

5          MR. LEVANT:  Your Honor?  You know, you made this a

6   Chapter 7. He wouldn't be able to get paid out of the estate

7   anyway.

8          THE COURT:  Yeah, that's true.  I guess --

9          MR. LEVANT:  That's not the problem.

10         THE COURT:  Yeah.  I guess what I'm trying to do is,

11  I'm trying to see if the debtor could even do a Chapter 11.  I

12  know that we're in a Chapter 7 right now, but I do feel like,

13  you know, there are some inconsistencies about what happened

14  with her counsel.  And so, I'm trying to see if there's some

15  way for us to right the ship.  And I don't know if the debtor

16  is able to comply with all these things.  But I guess my

17  suggestion is -- so Pam, I don't think we have a date that's in

18  two weeks, right?  Do we have something that's in three weeks

19  or what's the next date?

20         THE CLERK:  The next date's July 23rd.

21         THE COURT:  Okay.  So our next date is July 23rd.

22         And so Lender, Mr. Levant, is there some sheriff's

23  sale or something going on that I should know about between now

24  and --

25         MR. LEVANT:  It's scheduled, I believe, for August.

1   Give me --

2          THE COURT:  Okay, great.

3          MR. LEVANT:  -- another moment.

4          THE COURT:  Excellent.  Perfect.

5      (Counsel confer)

6          MR. LEVANT:  No, July 1.  I beg your pardon.  July

7   1st at 10:00 a.m.  And Your Honor, for that reason, we're

8   disinclined --

9          THE COURT:  Yes.

10         MR. LEVANT:  -- to carry this any further.  I

11  understand what the court is trying to do.  But the problem

12  that we have is that this debtor has overpromised and

13  underdelivered since before the bankruptcy was filed.  And I

14  have extreme doubt --

15         MS. BOYD:  I would like --

16         MR. LEVANT:  -- that anything will change.

17         THE COURT:  I'm not saying that, you know, I don't --

18  this is my first interaction with the debtor. And I guess what

19  I'm saying is sometimes when I have cases where people are

20  saying different things and I'm not sure where it's all going

21  to end up, sometimes if I give the case a little bit of time

22  that usually helps me decide in the end what to do.

23         So I am going to ask that you postpone that sale just

24  for a month, postpone it until August, right?  You can do that.

25  Can't you?

1            MR. LEVANT:  I want to make sure I've only postponed

2    it once because if I postponed it twice, I will need a consent

3    order from the debtor.

4            THE COURT:  Okay.  Well, this is what I'm offering to

5    you, sir.  If you need to get some kind of consent, my

6    suggestion is that you draft an order that I will sign that

7    will allow the sale to be pushed to August.  Okay?  And you

8    could just say that --

9            MR. LEVANT:  Well, if you're willing to --

10           THE COURT:  I'm willing to --

11           MR. LEVANT:  -- show directed sheriff --

12           THE COURT:  -- to do that.

13           MR. LEVANT:  -- I think they would --

14           THE COURT:  I'm willing to do it.  Yeah.  So I

15   suggest that you check to see whether you need that order from

16   me.  If you do draft the order and run it -- I guess, just -- I

17   guess file it with me --

18           MR. LEVANT:  I will do so.

19           THE COURT:  -- and I will sign that order.  That

20   we'll bump the sale to August.

21           And then we're going to have a hearing, everyone, on

22   July 23rd.

23           And at that hearing, Debtor, what I'd like to see is

24   that all of the payments have been made to the Lender.  Now, I

25   understand your frustration that you can't make those payments,

1    so I guess what would be good enough for me is number 1, you

2    absolutely need to get counsel involved in this case.  So you

3    need to have counsel.  And what I would be willing to accept is

4    if you get counsel who's done a Chapter 11 before, if you give

5    your counsel funds and the counsel, the Chapter 11 proposed

6    counsel holds that in escrow, and as an attorney of the court

7    they're willing to tell me at the July 23rd hearing that they

8    have those funds from you, that would go some way to reassuring

9    me that you're able to consummate a Chapter 11 case. Do you

10   understand what I'm saying?

11          MS. BOYD:  Okay.

12          THE COURT:  Yeah.

13          MS. BOYD:  Yeah.

14          THE COURT:  So number 1, get Chapter 11 counsel.

15          And number 2, make sure that you've got like $3,000

16   and that that's -- so by the time -- Mr. Levant, by the time we

17   have this hearing on July 23rd, I guess actually the debtor

18   might be due for three payments; is that right?  So she'd need

19   to have about $4,500 on hand?

20          MR. LEVANT:  That's correct, Your Honor.

21          THE COURT:  So --

22          MR. LEVANT:  So --

23          MS. BOYD:  Your Honor, it's only two payments?

24          MR. LEVANT:  Excuse?

25          THE COURT:  Yeah, but by the --

1          MR. LEVANT:  I have confirmed --

2          MS. BOYD:  It's only two payments.

3          MR. LEVANT:  I've confirmed that the sale was

4  postponed twice so I will circulate --

5          THE COURT:  Yeah.

6          MR. LEVANT:  -- and submit an order.

7          THE COURT:  Yeah, give me that order.

8          So Debtor, what I'm saying is that while he's sitting

9  here today you may only owe two payments, I'm going to continue

10  the hearing for you and I'm going to -- during that

11  continuance, I'm going to put off the foreclosure sale so that

12  that's not scheduled until August, but that means --

13          MS. BOYD:  I appreciate it.

14          THE COURT:  Yeah.  But that means that by the time we

15  get to August that means that a payment will have been due from

16  May, June and July.  So you'll need to have --

17          MS. BOYD:  What I'm trying --

18          THE COURT:  -- three payments.

19          MS. BOYD:  -- to tell you is --

20          THE COURT:  Yeah.

21          MS. BOYD:  -- the money is often due the first of the

22  month.  So it will only be June and July.  That's what I'm

23  trying --

24          THE COURT:  Yeah.

25          MS. BOYD:  -- to tell you.  The payments -- the

1    payments are due June and -- I mean, the first of the month for

2    both payments.

3              THE COURT:  So Mr. Levant, what about that May

4    payment?

5              MR. LEVANT:  Let me look.  I believe one of them is

6    due --

7              MS. BOYD:  We filed yesterday.

8              MR. LEVANT:  I believe one of them is due on the

9    first and the other one is not.  So bear with me again --

10             THE COURT:  It sounds like you might have --

11             MR. LEVANT:  -- and I will look.

12             THE COURT:  It sounds like there's two different

13   loans debtor.  So one may be due on the first.

14             MR. LEVANT:  The property --

15             MS. BOYD:  There's two different loans, but I know

16   when they're -- I know when they're both due because we pay --

17   we pay him regularly.

18             THE COURT:  Okay.

19             Mr. Levant, what did you say?

20             MR. LEVANT:  I'm looking.  There are two loans, but I

21   believe one of them is due on a day other than the first.  So

22   give me just a moment.

23             THE COURT:  Okay.

24             MR. LEVANT:  Let's see.  Here's one that -- oops,

25   wrong page.  Let's see.

29

1          THE COURT:  So while you're looking at that, I just

2    want to tell you --

3          MR. LEVANT:  One of them is the first.  Let me look

4    at the other.

5          THE COURT:  Okay.  So while you're looking at that, I

6    just want to talk to the U.S. Trustees.

7          So I had converted this case to a 7, but I'm trying

8    to see if there's some way that the debtor could remain in an

9    11 on this motion for reconsideration.  And I guess my question

10   to you is, other than making sure that the debtor paid the

11   secured creditor their post-petition payment, what other

12   information did you want from this debtor if they were to try

13   to stay in an 11?  I'm sorry.  So I'm talking to the U.S.

14   Trustee.  I think there was a woman who made an appearance.

15         THE CLERK:  Rachel Wolf.

16         THE COURT:  Rachel Wolf.  And if you're talking, you

17   might be on mute so --

18         MS. WOLF:  Yes, Your Honor.

19         THE COURT:  Okay, good.  Yeah.

20         MS. WOLF:  Rachel Wolf for the U.S. Trustee.

21         Your Honor, the U.S. Trustee is just observing at

22   this point.  The Court granted the U.S. Trustee's motion on

23   multiple grounds.  The debtor never filed schedules and really

24   did not move forward with the case.  The U.S. Trustee is

25   sensitive to the --

```
 1                THE COURT:  Okay.

 2                MS. WOLF:  -- disagreement between the debtor's

 3    principle and debtor's counsel, but none --

 4                THE COURT:  Yeah.

 5                MS. WOLF:  -- of the information was provided to the

 6    U.S. Trustee.

 7                THE COURT:  Okay, So hold on one second.

 8            So Mr. Assad, you didn't file schedules in this case?

 9                MR. ASSAD:  Your Honor, this case was converted two

10    weeks after it was filed.

11                THE COURT:  Right.  So did you not --

12                MR. ASSAD:  So this case was filed in emergency to

13    stay --

14                THE COURT:  Yeah.

15                MR. ASSAD:  -- the foreclosure.  And as is typical,

16    we put together --

17                THE COURT:  So do you have --

18                MR. ASSAD:  -- the schedules after the case is filed.

19                THE COURT:  Yeah.  So have you drafted any schedules

20    in this case already?  Did you draft any schedules?

21                MR. ASSAD:  So I haven't because the --

22                THE COURT:  Okay, I'm not asking you --

23                MR. ASSAD:  Soon after the --

24                THE COURT:  I'm just saying that if you have them

25    here today, I would ask that you send whatever you have,
```

1  whatever work product you have so we can give that to the next

2  attorney.

3          MR. ASSAD:  I didn't.

4          THE COURT:  But it sounds like you don't even have

5  the draft schedules prepared?

6          MR. ASSAD:  If I may, I also want to -- may I just

7  briefly address the Court on that and one other thing?  And

8  that's the reason the schedules were not filed was because

9  after the case was filed there quickly became this

10  disagreement, unraveling, whatever we're calling it, where I

11  didn't know what to believe.

12          And to that extent, I understand the Court's dismay

13  about coming before the Court and saying that the debtor didn't

14  have a bank account.  I totally get that.  I get the importance

15  of a bank account whether you are in Chapter 11, 7, 13 or if I

16  ever do 9 or 12, there's two.  But the debtor told me they

17  didn't have a bank account, and the case was filed in

18  emergency.  The case had already been filed.  I was just going

19  on with what they told me, but I --

20          THE COURT:  Okay.  So Mr. Assad, I understand what

21  you're saying, but at this point I'm just trying to move on to

22  see if this debtor can possibly stay in 11.  So --

23          MR. ASSAD:  I get that.

24          THE COURT:  Okay.  So Debtor, there are a number of

25  things that you are going to need to do between now and July

```
 1   23rd in order for me to seriously consider --

 2            MR. LEVANT:  Your Honor?

 3            THE COURT:  -- motion for reconsideration.

 4            So hold on a second, Mister --

 5            MR. LEVANT:  Sorry to interrupt.

 6            THE COURT:  Yeah.

 7            MR. LEVANT:  But she is correct.  Both loans are due

 8   on the first of the month.  My apologies.

 9            THE COURT:  Okay.  All right, thank you.

10            So I guess what I'm trying to do, Debtor, is I'm

11   giving you one last chance to see if you can get everything

12   together by July 23rd.

13            So what you need to do after you hang up this phone

14   call is number 1, you need to find counsel that's willing to

15   take your case and hopefully counsel that's familiar with

16   Chapter 11s.  Given the amount involved, I understand that that

17   might be hard, but you need to get counsel.  And when you get

18   the counsel retained -- so number 1, you need to get a lawyer

19   hired and helping you ASAP.

20            Number 2, you need to have that lawyer file schedules

21   and statements of financial affairs and there are all kinds of

22   obligations that the debtor has to do when they first file.

23   Your lawyer would have to file a motion to use cash collateral

24   and there's a number of other things that your lawyer should

25   hopefully know once you retain them.  So all of those things
```

1   are going to have to get done on or before July 23rd.

2           In addition to that, you need to make sure that you

3   need to make at least two payments totaling $3,000 to this

4   lawyer that you have that they can just hold in escrow.  And as

5   long as they tell me on July 23rd that they have the funds on

6   hand, I don't need you to prove that the lender accepted them

7   or anything like that.

8           So do you understand those obligations that I'm

9   asking you to comply with?

10          MS. BOYD:  Yes, ma'am.

11          THE COURT:  Okay.

12          MS. BOYD:  Definitely.

13          MR. LEVANT:  So Your Honor, why does it have to be

14  held in escrow?  Isn't my client entitled to them no matter

15  what?

16          THE COURT:  Well, I'm happy to have her give you the

17  funds, but I just heard her say that --

18          MR. LEVANT:  Yeah, she --

19          THE COURT:  -- she's trying to send you --

20          MR. LEVANT:  -- can send them.

21          THE COURT:  -- the funds.  Excuse me?

22          MR. LEVANT:  She can send us a cashier's check --

23          THE COURT:  Okay, I'm happy to do that --

24          MR. LEVANT:  -- to my office.

25          THE COURT:  I was just --

```
 1              MR. LEVANT:  I will then surrender --
 2              THE COURT:  You know, I'm just struggling.  You know,
 3    I do have debtors who tell me that lenders, once you default,
 4    they don't accept payments.  So you know, if she sent it to
 5    your client --
 6              MR. LEVANT:  Your Honor, I will promise you --
 7              THE COURT:  Okay, that's fine.
 8              MR. LEVANT:  -- that they will take the money if I
 9    have to go down there and shove it --
10              THE COURT:  Okay.
11              MR. LEVANT:  -- in their pockets.
12              THE COURT:  All right.  So Debtor, what I --
13              MS. BOYD:  Will I have his address?
14              THE COURT:  Debtor, what I think I'm saying, I'm
15    hearing is that Mr. Levant would instead of sending the funds
16    to whatever counsel you retain, he would like you to give him
17    the cashier funds. So I would ask Mr. Levant --
18              MS. BOYD:  Okay.
19              THE COURT:  -- do you guys have each other's contact
20    information because at the very least, I'd like her the
21    opportunity to have your phone number and then you can
22    coordinate how she can get those cashier checks to you on or
23    before July 23rd.  So --
24              MR. LEVANT:  I know I have her email --
25              THE COURT:  Okay.
```

```
 1              MR. LEVANT:  -- and I probably have her phone number.

 2              THE COURT:  Okay.

 3              MR. MCGARRITY:  Jim McGarrity.  I'll make sure she

 4     gets it.

 5              THE COURT:  Okay, great.

 6              MR. MCGARRITY:  I have it.

 7              THE COURT:  Okay, great. So I'll see everyone back

 8     here on July 23rd.  And my hope is that the funds will be in

 9     the hands of Mr. Levant and that we'll have Chapter 11 counsel,

10     and that a lot of these documents have been taken care of.

11              And the last thing I would say, Debtor, is that you

12     just want to make sure that as soon as you get your new counsel

13     lined up, they're going to need to reach out to the U.S.

14     Trustee's Office to see what other deficiencies there may be so

15     that that's taken care of before the July 23rd hearing.  Do you

16     understand that?

17              MS. BOYD:  Yes.

18              MS. WOLF:  Yes.

19              THE COURT:  Okay.  And then --

20              MR. LEVANT:  Your Honor, you said the funds would be

21     in my hands.  Can I give them to my client when I get them?

22              THE COURT:  I don't care who has them.  I just want

23     someone to --

24              MR. LEVANT:  Well, I mean --

25              THE COURT:  -- get a cashier's check.  So if you get
```

 1    the cashier's check from her, I'm happy if you turn it over to

 2    your client.

 3            MR. LEVANT:  Yeah.  I don't have to hold it in escrow

 4    or anything.

 5            THE COURT:  No, I just want her to -- you know, to be

 6    an 11, she had to meet those funds.  Yeah.

 7            MR. LEVANT:  I just want what's best before me.

 8            THE COURT:  Yeah.  No, that's fine.  And then in the

 9    meantime, you can give me the order --

10            MR. LEVANT:  Okay.

11            THE COURT:  -- for the sheriff's sale.  Okay?

12            MR. LEVANT:  I'll do that.

13            MS. WOLF:  Your Honor?

14            THE COURT:  Yes?

15            MS. WOLF:  This is Rachel Wolf with the U.S. Trustee.

16    I'd like to just make some points so that the parties and the

17    Court are aware.

18            So the Court wants to reverse the order for --

19            THE COURT:  Well, I don't want to reverse --

20            MS. WOLF:  -- converting the case to a 7.

21            THE COURT:  Yeah.  So let me just be crystal clear,

22    Ms. Wolf.  So I feel like the debtor may not have had the full

23    opportunity to be in the Chapter 11 because I converted it

24    pretty quickly within two weeks of filing.  And so, I'm trying

25    to give the debtor the benefit of the doubt here.  And what I'm

 1   trying to do is on considering the debtor's motion for

 2   reconsideration of my order granting a relief from the stay and

 3   converting this case to a 7, I'm basically using the July 23rd

 4   hearing as a placeholder to see if between now and July 23rd

 5   can the debtor do everything that the debtor should have been

 6   doing all along since the case was filed on May 6th.

 7          So if there's other obligations that you think that

 8   the debtor should --

 9          MS. WOLF:  Okay.

10          THE COURT:  -- you know, comply with, that's why I'm

11   telling the debtor she needs to make sure that her new counsel

12   gets in touch with you guys to see that they make right

13   whatever, you know, needs to be made right.  I'm not telling

14   them, the debtor, that I'm definitely granting her motion for

15   reconsideration.  I'm just saying that, you know, in

16   appreciation for what she's been through and the disagreement

17   she's had with counsel, I'm trying to give her this one last

18   opportunity to make things right.

19          So if you think that there are things that she needs

20   to do, feel free to let Mr. McGarrity know.  Otherwise,

21   hopefully if she gets counsel involved, they'll be reaching out

22   to you before July 23rd.

23          MS. WOLF:  Okay.  And if the debtor complies with the

24   court's direction, the court will vacate the --

25          THE COURT:  I would --

1          MS. WOLF:  -- in rem relief order --

2          THE COURT:  -- consider it.

3          MS. WOLF:  -- and vacate the conversion?  Okay.

4          THE COURT:  I would consider granting the motion for

5   reconsideration.  I would consider it.

6          MS. WOLF:  Okay.  Then how is the Chapter 7 trustee

7   supposed to proceed given that -- since really --

8          THE COURT:  Yeah.

9          MS. WOLF:  Because the clock is ticking there too

10  with respect to a 341 meeting, with respect to the debtor's

11  requirement to have counsel file schedules, things of that

12  nature.  I don't know if the clock --

13         THE COURT:  Yeah.  I think we should hold those --

14         MS. WOLF:  -- is -- to those things.

15         THE COURT:  Yeah.  I think that all of those

16  obligations should be hold in abeyance for the next month until

17  I can just get a better idea of exactly what's going on.  And

18  during that month, if things go right, the debtor will file

19  schedules, right?  We'll have some basic information from the

20  debtor.  We'll have counsel on board.  But if these things

21  aren't done, then the Chapter 7 trustee can pick up those

22  duties after July 23rd.  I'm just holding off those

23  responsibilities for one month.

24         MS. WOLF:  Well, Your Honor, in the alternative, if

25  the debtor doesn't add counsel and there's no schedule, this

1  case can dismiss, and the debtor can file anew.

2         THE COURT:  Well, right now, the case is in a Chapter

3  7.  So the U.S. Trustee --

4         MS. WOLF:  Right.

5         THE COURT:  -- had asked for the case to be converted

6  and not dismissed.

7         MS. WOLF:  Right.  Well, I mean, but statutorily if

8  the debt -- but we didn't ask for counsel to withdraw and that

9  the corporate counsel not have any representation -- I mean,

10 corporate debtor not have any representation.  So if the

11 corporate debtor is not represented then the case should be --

12 the Chapter 7 trustee can't do what the trustee needs to do,

13 and this case shouldn't proceed as a case in bankruptcy because

14 the corporation is not represented.

15        THE COURT:  Okay.  So I guess --

16        MS. WOLF:  So we're kind of in this limbo.

17        THE COURT:  So Ms. Wolf, you represent the U.S.

18 Trustee's Office, right?

19        MS. WOLF:  Yes.

20        THE COURT:  Right.  And so when John was here before

21 he had the choice of dismissal or conversion, and at that time

22 while Mr. Assad was counsel, John wanted to press for

23 conversion because he thought that there were some weird things

24 going on and he thought that a Chapter 7 might be better.

25        So what I'll leave you with is between now and July

*TheRecordXchange*
www.trxchange.com · (800) 406-1290

1    23rd, if the U.S. Trustee changes their position and they're

2    willing to dismiss the case, which I think the debtor would be

3    happy with, you know, you should just let me know that at the

4    July 23rd hearing.

5         MS. WOLF:  Okay.  Thank you, Judge.

6         THE COURT:  You're welcome.

7         All right, everyone, I will talk to you on the 23rd.

8    Thank you.

9         MR. LEVANT:  Thanks.

10        MR. MCGARRITY:  Thank you, Judge.

11        MS. BOYD:  Thank you.

12        MR. ASSAD:  Thank you.

13        THE COURT:  Yes.

14        That concludes the call on the 12:30 list.

15        (Proceedings adjourned at 1:57 p.m.)

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

      I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader