UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: | Case No. 25-11778AMC |
| J McCloud Realty LLC,  CH: 7 | |
|  | Philadelphia, Pennsylvania |
|  | September 3, 2025 |
|  | 2:05 p.m. |

BEFORE THE HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| For the Debtor: | Michael I. Assad |
| | Sadek Law Offices, LLC |
| | 1500 JFK Boulevard , Suite 220 |
| | Philadelphia, PA 19102 |
| | 215-545-0008 |
| | |
| For United States Trustee: | John Henry Schanne |
| | DOJ-Ust |
| | Office of The United States Trustee |
| | Robert N.C. Nix Federal Building |
| | 900 Market Street, Suite 320 |
| | Philadelphia, PA 19107 |
| | 202-934-4154 |
| | |
| Also Appearing: | Jamirah McCloud |
| | Khalilah Boyd |

Proceedings recorded by electronic sound recording;
transcript produced by TheRecordXchange.

```
 1   SEPTEMBER 3, 2025                                    2:05 P.M.
 2             THE CLERK:  Number 87 J. McCloud Realty, LLC is
 3   appearing on the application for compensation filed by Debtor's
 4   Counsel.  Appearances, please.
 5             MR. ASSAD:  Good afternoon, Your Honor.  Mike Assad
 6   on behalf of Sadek Law Offices.
 7             THE COURT:  Okay.
 8             MS. BOYD:  Hi.  Khalilah Boyd, principal.
 9             THE COURT:  Okay.
10             MS. MCCLOUD:  Jamirah McCloud, Debtor.
11             THE COURT:  Thank you.  You guys can have a seat.
12             MR. SCHANNE:  John Schanne on behalf of the UST.
13   Good afternoon, Your Honor.
14             THE COURT:  Good afternoon.  Did you -- were you
15   taking a position on any of this, Mr. Schanne?
16             MR. SCHANNE:  We did not, but I figured I should hang
17   around just in case.
18             THE COURT:  Yeah. Yeah. Yeah.  No problem.  Okay.
19   So I don't think I saw a formal written objection by you guys
20   to the fee application; is that correct?  Did you ever file
21   anything in writing?
22             MS. BOYD:  Yes.
23             THE COURT:  Okay.  Pam, did they file something in
24   writing that I missed?
25             THE CLERK:  Yes.  There was something filed.  It was
```

1   with a motion that was also filed.  I can find the number on
2   the docket.
3           THE COURT:  Oh, so this was filed earlier.  Okay.  So
4   Mr. Assad, I guess I had some questions.  So when we were here
5   earlier, I thought I had heard them say that when they
6   initially retained you they paid 11,000 or some amount, and you
7   -- they initially paid you something, and then you were asking
8   them for more money, and they didn't want to give you more
9   money.  So did they initially pay you an amount when you first
10  met with them?
11          MR. ASSAD:  So originally there was a Chapter 13
12  filed for the Debtors principal in an attempt to stop the
13  foreclosure without filing a Chapter 11 --
14          THE COURT:  Uh-huh.
15          MR. ASSAD:  -- which I advised may or may not work
16  because it largely rested on the lenders willing -- the lenders
17  -- I spoke to some lenders' attorneys who said that different
18  lenders have different positions on single-member LLCs and
19  whether --
20          THE COURT:  Uh-huh.
21          MR. ASSAD:  -- the stay applies, et cetera.  So for
22  that, $2,500 was collected from the Debtor.
23          THE COURT:  Okay.
24          MR. ASSAD:  And the case was filed.  It wasn't
25  successful.  And so --

1          THE COURT: So how much -- I want to know, how much
2     were you paid in connection with the Chapter 11?
3          MR. ASSAD: So then the Debtor paid $10,000 for the
4     Chapter 11, but pursuant to the retainer agreement that was
5     filed with the application, $2,000 that was previously paid was
6     considered to be part of the Chapter 11.
7          THE COURT: So they basically just -- they gave you
8     8,000 on top of the original?
9          MR. ASSAD: So 10,000 -- so 2,500 --
10         THE COURT: Oh.
11         MR. ASSAD: -- and then 10,000, but the $500 was
12    considered cost for the Chapter 13.
13         THE COURT: Okay. So --
14         MR. ASSAD: All of which was collected before the
15    Chapter 11 was filed.
16         THE COURT: Okay. So they paid you the $10,000 and
17    now we're here on your request to be paid $6,794.50?
18         MR. ASSAD: Yes, Your Honor, which is the balance
19    from the pre -- so the pre-petition services were rendered and
20    hourly records are attached to the application.
21         THE COURT: All right. But I thought that -- so when
22    did the Debtor file for bankruptcy?
23         MR. ASSAD: On May 6th.
24         THE COURT: Right. Okay. So they filed on May 6th,
25    and then --

1             MR. ASSAD:  I believe it was May 6th, I'm sorry.
2             THE COURT:  Okay.  But then all of these fees were
3    incurred post-petition?
4             MR. ASSAD:  Yes.
5             THE COURT:  And these were the fees I think that you
6    would ask them to pay that they were certainly not willing to
7    pay at the time?
8             MR. ASSAD:  No, Your Honor.  And there's been no
9    collection request.
10            THE COURT:  I just remember they were saying that you
11   had said like in order to represent them you needed an extra
12   something thousand dollars, and they were like, there's no way
13   we're giving you more money to do that.  So had you not asked
14   them to pay more money than the initial 10,000 subject to
15   that --
16            MR. ASSAD:  No, Your Honor.
17            THE COURT:  Okay.  Well in any case, they clearly
18   don't want to pay any additional money to you.  And I guess I
19   was looking at your post-petition fees here, and I did have a
20   question.  It's my recollection that at the time that you no
21   longer represented them because you withdrew from the case,
22   they were trying to get other counsel, and I was trying to make
23   sure -- give them a chance to see if they could get something
24   done.  And I had said, well, did you file the schedules?  And
25   at that time, I think the schedules hadn't been drafted or

1   filed.  Do you remember that?
2          MR. ASSAD:  Yes, Your Honor.
3          THE COURT:  Okay.  So apparently you hadn't drafted
4   or filed schedules, but you did take three hours to draft a
5   Chapter 11 plan?
6          MR. ASSAD:  Yes, Your Honor.  So when this case was
7   filed, things moved very quickly.  So the case was filed, and
8   then two days later, the lender brought their motion to
9   prohibit use of cash collateral because the existence of the
10  cash collateral agreement wasn't brought to my attention at
11  that time by the Debtors.
12         So at that -- and there was an expedited hearing the
13  following week.  And so the Debtor -- the lender's motion was
14  very heated in its -- in its insinuations that the case was not
15  serious, and that the case was just for delay.
16         And the reason for proposing the plan that early,
17  which is very early, was to show that the case had some
18  possibility for reorganization or liquidation.
19         So it was to show that the case was serious to come
20  in here and say to the Court and to the lender, there is a plan
21  here.  So that's the -- that's why that was done, which I
22  understand is unusual, but --
23         THE COURT:  Uh-huh.  So did you guys lose the real
24  property?  Was it sold at foreclosure?
25         MS. MCCLOUD:  Yes.

```
 1                THE COURT:  All right, Mr. Assad, you can have a
 2   seat.
 3                MR. ASSAD:  Okay.
 4                THE COURT:  I'll share my thoughts with you about
 5   your fee application.  I think that your filing of this case
 6   and the manner in which you conducted the case did not rise to
 7   the level that I would expect of a Chapter 11 debtor.
 8                When I was in private practice as a Chapter 11
 9   debtors counsel, the first thing I would do is I would meet
10   with my clients and I would ask them about the first day
11   motions that you have to file.  And the first day motion that
12   everyone always files in every Chapter 11 case, absent extreme
13   unusual circumstances, is a motion to use cash collateral.
14   That's just the basic motion.
15                And by failing to file a motion to use cash
16   collateral, and I mean, I think that what I inferred happened
17   is that you met with them.  You don't routinely practice
18   Chapter 11.  You routinely practice consumer matters.  You
19   didn't understand the importance of filing a motion to use cash
20   collateral.  I can't imagine that they would lie to you and say
21   that they don't have bank accounts or they didn't disclose
22   about, you know, the cash agreement that they have with their
23   secured lender.  I think you just weren't prepared to sit them
24   down and tell them about all the first day motions that had to
25   be filed in this case.
```

1            And by not drilling down and making sure that there
2   was a motion to use cash collateral on the first day, like,
3   that's usually what happens.  The case gets filed and there's
4   several first day motions to get filed.  And the first one is
5   the cash collateral.
6            And by failing to file that and telling me in court
7   that you believe that the Debtors didn't have a bank account,
8   was completely preposterous.  I have never, in my experience,
9   ever seen any Debtor that didn't have a bank account.  And if
10  they said that, I can't imagine it, maybe they misunderstood
11  it.  But for you to not push back and to say, who do you bank
12  with?  I'm sure you have bank accounts.  How do you pay things?
13  Things like that.  By not drilling down and getting the answers
14  to those questions, you put the Debtor in a situation where it
15  was a complete free-for-all on those hearing dates.
16           And as a result of your actions, they lost their
17  property.  They lost -- they didn't get anything close to what
18  they wanted.  And your judgment in exercising discretion and
19  drafting a Chapter 11 plan when you didn't even draft the
20  schedules and statement of financial affairs, which is -- would
21  have been helpful for them after you had withdrawn and I could
22  have had someone else try and do something to help them, the
23  whole thing was just a disaster.
24           On top of the fact that I know you didn't put your
25  time in here for it, but you filed a motion to extend time to

1  file an appeal in connection with the motion for relief, which
2  is not even permitted under the rules.
3              MR. ASSAD:  So may I address a few of those?
4              THE COURT:  Yeah.
5              MR. ASSAD:  So I understand I typically represent
6  consumers in Chapter 7s and Chapter 13s.  I do have experience
7  in Subchapter 5 cases.  I've represented two Subchapter 5 cases
8  successfully, one before Judge Frank and one before Judge Mayer
9  (phonetic).
10             At the PBI Institute last year, the U.S. Trustee's
11 Office, Mr. Baker and Mr. Sellers (phonetic) gave a
12 presentation on how to overcome a U.S. Trustee objection to
13 confirmation in a Subchapter 5 case.  And the example that they
14 used was a case in which I represented the Debtor.
15             THE COURT:  Sounds like you did a good job in that
16 case.
17             MR. ASSAD:  I understand that -- so, you know, that
18 doesn't mean I know everything and do everything correct, but I
19 do have experience in these cases, and I do understand --
20             THE COURT:  I can see that you may have some
21 experience in Subchapter 5 cases.  This was a Chapter 11 case,
22 and the very basic tasks were not completed, and as a result,
23 your clients lost their real property.
24             MR. ASSAD:  Your Honor --
25             THE COURT:  Yeah.

1             MR. ASSAD:  -- there was no bank account, as the
2   lender later said, which was correct.  I did push back against
3   it.  They said none existed.  I mean --
4             THE COURT:  So how -- I mean, I guess, you know, when
5   it turns out that there are no bank accounts, right, then how
6   can we have a Chapter 11 plan?  How can we do any of this?
7             MR. ASSAD:  So they said they would open one once the
8   case was filed.
9             THE COURT:  Okay.  But how are they going to use cash
10  during the case?
11            MR. ASSAD:  Well, they didn't inform me that there
12  was an assignment of rent agreement executed.
13            THE COURT:  Okay.  I'm just saying that I guess my --
14  the crux of my concern is that if you have Chapter 11 debtor
15  clients that come to you and you say, let's go file that motion
16  to use cash collateral, and they say we have no bank accounts,
17  that's like a big red flag.  Like, how were they paying
18  anything?
19            MR. ASSAD:  Your Honor, I will say this.  I -- this
20  case should not have been brought.  I understand that.  And as
21  I explained to the Court earlier, I didn't want to file this
22  case.  I initially refused to.  And when I refused to, the
23  Debtors' principals became belligerent and called our office
24  over and over again, called the personal cell phones of another
25  attorney in our office over and over again.  And eventually,

```
 1  Mr. Sadek and I relented and said, okay, we'll do it.
 2              Now, I understand that that, you know, I understand
 3  that that was not the right approach, and I should have stood
 4  firm on that.  But once the case was filed, I did what I could
 5  to try and make it work.  And the bottom line is, there wasn't
 6  a lot to work with.
 7              THE COURT:  I know.  So if we look back, and we could
 8  roll the clock back, even if they harassed you and gave you
 9  cell phone calls, you should never have accepted the case, and
10  you should never have filed this case.
11              And the price, the repercussions of filing the case,
12  despite realizing that you probably shouldn't have, is that I'm
13  going to deny your request for the remainder of the fees in
14  this case.  I'm not going to approve that application.  This
15  case should never have been filed.
16              And even if they harassed you, you're the
17  professional in the case and you should have said no.  And by
18  filing the case, you wasted everybody's time and there was a
19  lot of aggravation here.  So it's an expensive lesson to learn.
20  But this is the lesson that I think is proper in this case.
21  I'm not going to give you any more fees in this case.
22              MR. ASSAD:  I understand, Your Honor.
23              THE COURT:  Okay.  Thank you.
24              MR. ASSAD:  Thank you.
25              THE COURT:  All right.  Take care.  All right,
```

1  everyone.

2          MS. MCCLOUD:  What happens to our money?  They have

3  it.

4          THE COURT:  So he filed -- we're here today because

5  he filed a request for $6,794.50, and I denied it.

6          MS. MCCLOUD:  So how do we get our money back?

7          MR. ASSAD:  So I'll have Mr. Sadek cut you a check.

8  I'll talk to him as soon as I'm done here.

9          THE COURT:  Okay.  Thank you.

10         MS. MCCLOUD:  Can we get like a timeline for it?

11         THE COURT:  What?  I'm sure if you have any problems,

12 call Ms. Blalock (phonetic), Pam Blalock, if you don't get your

13 money back.

14         MR. SCHANNE:  Can we just have something filed on the

15 docket by counsel once it's been returned, and then we'll have

16 that for the record?

17         THE COURT:  Yeah.  Why don't you file that?

18         MR. ASSAD:  Will do.

19         THE COURT:  He'll file something on the docket to say

20 that it's been returned.  Thank you.

21         MS. MCCLOUD:  Thank you.

22         THE COURT:  Yep.

23    (Recess at 2:19 p.m., recommencing at 2:21 p.m.)

24         THE COURT:  Okay.

25         MR. SCHANNE:  Your Honor, for the record, John

1  Schanne on behalf of the United States Trustee.  Your Honor,
2  the Debtors' principals had questions about whether Your Honor
3  ruled that the fees that have been applied pre-petition are to
4  be returned, or if it's just the remaining retainer that should
5  be returned because the post-petition fees were not approved.
6  That's the question by the Debtor.  I thought I might be able
7  to frame it for you.
8              THE COURT:  Yeah, yeah.  Right.  So I was merely
9  ruling that he's not entitled to the $6,700.  So to the extent
10 that they've -- you've already -- they've already paid you the
11 $10,000, right?  And you applied that?
12             MS. BOYD:  12,000.
13             THE COURT:  Yeah.  What?
14             MS. BOYD:  12,000.
15             THE COURT:  Right.  So he -- I think he was just
16 asking for the money in addition to what's already been paid,
17 right?
18             MR. ASSAD:  No.  So the -- I'll pull out the
19 accounting.
20             MS. MCCLOUD:  He has two different invoices.  One we
21 exhausted he told us --
22             THE COURT:  Yeah.
23             MS. MCCLOUD:  -- that we paid 12,000 --
24             THE COURT:  Yeah.  Yeah.  Yeah.
25             MS. MCCLOUD:  -- some dollars --

```
 1              THE COURT:  Uh-huh.
 2              MS. MCCLOUD:  -- and we owe 700.  And then he
 3   submitted the other one to you later that removes some of them,
 4   you know, things on the invoice.  So we're asking for all of
 5   our money back because what he did is he helped us lose our
 6   property.
 7              THE COURT:  No, I understand that.  So what were you
 8   going to say?
 9              MR. ASSAD:  So Your Honor, there was $12,000
10   collected from the Debtors prior to the case being filed.
11              THE COURT:  Yeah.
12              MR. ASSAD:  Of that, $1,738 was paid to the court for
13   the filing fee.  $3,467.50 was pre-petition --
14              THE COURT:  Expenses.
15              MR. ASSAD:  -- drawn down from the retainer.
16              THE COURT:  Yeah.  Because there's a balance.
17              MR. ASSAD:  At the time, the balance -- at the time
18   the case was filed, and currently the balance is $6,794.50,
19   which is what our law office is holding in escrow.
20              THE COURT:  Right.  So since I denied your fee
21   application, you have no other claim to that $6,000 amount, and
22   so you'll return that to them.
23              MR. ASSAD:  Yes, Your Honor.
24              THE COURT:  Okay.  So they're going to return the
25   $6,000 here.  He already spent the other part before he filed
```

1  for bankruptcy for you.
2           MS. MCCLOUD:  I'm confused.  What did he spend it on?
3           THE COURT:  Okay.  So let's just do the math.  So in
4  preparing this case to be filed, you sent him a total of
5  $12,000?
6           MR. ASSAD:  Yes, Your Honor.
7           THE COURT:  So of that $12,000, he spent some of that
8  money doing pre-petition services, and that was not up for
9  consideration today.  That was just something that he -- he did
10 the work pre-petition, and he drew down on the $12,000 that you
11 gave him to do that work.  And then he had this balance of
12 $6,000 that he hadn't actually spent yet doing post-petition
13 work.  And so what he was trying to do is he wanted to be able
14 to get the remaining amount that you had paid him, the $6,000
15 that he hadn't yet spent on -- that he hadn't spent -- well,
16 that he had spent but that I hadn't approved.  And so he was
17 hoping that I would approve those post-petition fees that he
18 said he earned after you filed for bankruptcy, and I denied
19 them.
20          MS. MCCLOUD:  Okay.  So --
21          THE COURT:  So the only thing that's coming back to
22 you is the 6,700 whatever dollars, and the amount that he
23 already spent -- that money is gone.
24          MS. MCCLOUD:  I want to know what he spent it on.
25 That's --

1          THE COURT: So he spent it on the filing fee. How
2    much?
3          MR. ASSAD: The filing fee was 1,738.
4          THE COURT: So for $1700 he had -- $1700 was paid to
5    the clerk's office in order to file a Chapter 11.
6          MR. ASSAD: And the fees for the balance, the fees
7    earned were itemized and attached to the retention application.
8          MS. MCCLOUD: Oh, the invoice you made up?
9          MR. ASSAD: And served on the Debtor.
10         THE COURT: So that you showed them how much you
11   spent --
12         MR. ASSAD: Yes.
13         THE COURT: -- the other money?
14         MS. MCCLOUD: And we showed you that he made those
15   up. And I even gave him phone records to show that none of
16   that stuff was true.
17         MR. ASSAD: Your Honor, may I address the Court?
18         THE COURT: Yeah.
19         MR. ASSAD: I understand the Court's reasoning in
20   denying the fee application.
21         THE COURT: Yeah.
22         MR. ASSAD: And I do not contest that. I understand.
23   And if I was the Court, I may do the very same thing. That's
24   one issue.
25              There's really two issues that have been raised here.

1   The first is my competence, which the Court addressed in its
2   ruling.  And the second is my ethics.  They have come into this
3   court and said ridiculous things.  The first time they came
4   into this court they said --
5               THE COURT:  Okay.  Let me just stop you right here.
6   Let me just stop you right here.  I understand your position,
7   Mr. Assad, and I've seen you in numerous cases, and I don't --
8   that's not something that I had -- that is in question that we
9   need to talk about.  What is in question is they just need to
10  understand that money, part of the $12,000, was how it was
11  spent.  So that's the only thing that we need to explain to
12  them today.
13              MR. ASSAD:  I understand, Your Honor.
14              THE COURT:  Okay.  So basically, $1700 of the $12,000
15  went towards the filing fee, and the other fees, my
16  understanding, is what you billed in pre-petition services --
17              MR. ASSAD:  Yes, Your Honor.
18              THE COURT:  -- before they filed the case.  So before
19  he filed this case, he billed time to this case to prepare.
20  Like he filed the voluntary petition that filed this case, and
21  he filed some other documents in the case, and that's what he
22  -- that's what he incurred.  So I guess what I'm saying is that
23  that's not before me today.  The only thing before me today is
24  his request to spend the $6700, and I denied that and you're
25  going to get that back.  I can't give you legal advice as to,

1   you know, being unhappy about how the other money was spent.
2   So if you want to do something about that, you'll need to do
3   some investigation.
4           MS. MCCLOUD:  We actually gave you that, thought.
5   We --
6           THE COURT:  So the way that it works, though, is that
7   you have to tee up a motion.  You have to -- in order to get
8   something like that back --
9           MS. MCCLOUD:  It's in the motion.  Ms. Pam is not
10  there?  It's in there.
11          THE COURT:  There's no motion.  I mean, that was --
12  those are pre-petition.  Those are pre-petition expenses.  So
13  if you have a problem, you'll need to go to the disciplinary
14  board and talk to them about that, okay?
15          All right.  So you'll get the $6700 back, and that's
16  all I can do here.  All right.  Good luck.
17          MR. ASSAD:  Your Honor, I appreciate the
18  clarification.
19          MR. SCHANNE:  Thank you, Your Honor.  I appreciate
20  it.
21          THE COURT:  Yeah. Yeah. Okay.  Thanks, Mr. Assad.
22      (Proceedings adjourned at 2:27 p.m.)
23
24
25

<u>C E R T I F I C A T E</u>

I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader